# EXHIBIT 1

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "Agreement") is made by and between Charley's Steakhouse – Cypress Street, Inc. ("CSI") and Keith Sherman ("Sherman") (collectively, the "Parties").

WHEREAS, Sherman filed a lawsuit in the United States District Court, Middle District of Florida, Tampa Division, styled "Keith Sherman, Michael Abraham, Sidney Jones and William Byrd, Plaintiffs, v. Charley's Steakhouse-Cypress Street, Inc. Talk of the Town Restaurants, Inc., Defendant," Case No. 8:15-CV-01824-RAL-AEP (the "Lawsuit");

WHEREAS, CSI has denied any and all liability for the alleged claims and causes of action in the Lawsuit; and

WHEREAS, the Parties desire to settle the Lawsuit and all other alleged claims arising from alleged non-payment or allegedly improper payment of wages in order to avoid the cost and distraction of litigation;

NOW, THEREFORE, in exchange for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, CSI and Sherman agree as follows:

## ADDITIONAL DEFINITIONS

A.      Released Parties -- When used in this Agreement, "Released Parties" means the following persons and entities, individually, collectively, and in any combination:

      (1)     Talk of the Town Restaurants, Inc. and Charley's Steakhouse – Cypress Street, Inc., and all of their respective past, present and future divisions, parents, subsidiaries, and affiliated entities;

      (2)     All of the predecessors, successors and assigns of the entities listed in subparagraph (A)(1);

      (3)     All of the past, present and future employees, officers, directors, managers, supervisors, agents, shareholders, owners, servants, partners, independent contractors, accountants, insurers, benefits plans, third party administrators, attorneys and representatives of the entities and persons listed in subparagraphs (A)(1) and (A)(2); and

      (4)     The heirs, assigns, trustees, successors, agents and representatives of the entities and persons listed in subparagraphs (A)(1), (A)(2) and (A)(3).

Keith Sherman initials

B.      Parties -- When used in this Agreement, "Parties" means Sherman and CSI.

## COVENANTS

1.      CSI shall pay the total sum of Eight Thousand, Four Hundred Seven Dollars and Forty-one Cents ($8,407.41) to Sherman pursuant to this Agreement (the "Payment"). The Payment shall be made by issuance of three checks payable as follows: (a) one check in the amount of Three Thousand, Two Hundred Fifty-Three Dollars and Seventy-one Cents ($3,253.71), as wages, <u>less applicable deductions</u>, made payable to "Keith Sherman" and for which CSI shall issue a W-2 form; (b) one check in the amount of Two Thousand, Six Hundred Fifty-three Dollars and Seventy Cents ($2,653.70), made payable to "Keith Sherman" and for which CSI shall issue a 1099 Form; and (c) one check in the amount of Two Thousand, Five Hundred Dollars and no Cents ($2,500.00) for attorneys' fees and costs, made payable to Wenzel Fenton Cabassa, P.A., and for which CSI shall issue a 1099 Form. CSI shall be deemed to have complied with the terms of Paragraph 1 of this Agreement upon delivery of the Payment (within the time and in the manner established by Paragraph 14 of this Agreement) to Sherman's attorneys, Wenzel Fenton Cabassa, P.A. CSI agrees that attorneys' fees and costs were discussed separately from the amounts payable to Sherman.

2.      Sherman hereby fully, finally and forever releases and discharges the Released Parties from any and all claims, liabilities, charges, demands, actions, causes of action, and suits of any kind arising from alleged non-payment or allegedly improper payment of wages, including claims under the Fair Labor Standards Act (FLSA); the Florida Minimum Wage Act, the Florida Constitution and any related contract or unjust enrichment claims related to amount of time worked and payment of wages, including claims for any type of damages or relief whatsoever, including, but not limited to, all claims for legal relief, all claims for equitable relief, and all claims for: back pay; front pay; tips; bonuses; incentive pay; commissions; salary; overtime compensation; other wages; other compensation; other money damages; reinstatement; continuation of insurance coverage; benefits under any employee benefit plan; medical or income benefits or payments; relocation expenses; any other fringe benefits; injunctive relief;

 Keith Sherman initials

equitable relief; declaratory relief; statutory damages, liquidated damages; compensatory damages; exemplary damages; consequential damages; punitive damages; attorneys' fees; costs; expenses; expert witness fees; interest; penalties; and any and all other claims for relief or damages.

3.     Sherman agrees to the dismissal with prejudice all of his claims in the Lawsuit.  The parties agree to file a motion for court approval of their settlement and further to do anything else necessary to effect the dismissal with prejudice of those claims, with each Party to bear his or its own attorneys' fees and costs.  If, for any reason, Sherman's claims in the Lawsuit are not dismissed with prejudice, then CSI shall have the option of declaring this Agreement null and void, and upon such a declaration Sherman shall promptly return to CSI the full amount of the Payment and the Parties shall be restored to the *status quo ante.*

4.     Sherman further agrees that he will not appeal the dismissal of the Lawsuit, and that he will not file any additional claims, charges, administrative proceedings, lawsuits or other actions against CSI or any of the Released Parties based upon any events occurring prior to the execution of this Agreement.  Sherman affirms and represents that other than the Lawsuit, he has not filed or made any complaints, charges or claims of any nature whatsoever against any of the Released Parties, and that he has no knowledge of any complaint, charge or claim having been filed or brought on his behalf.  If Sherman learns of any such complaint, charge or claim, he shall promptly request withdrawal of the complaint, charge or claim.  Notwithstanding anything to the contrary in this Agreement, this Agreement shall not limit any right Sherman may have to file a charge or participate in a proceeding with the EEOC or NLRB, *however*, Sherman waives and releases any right he may have to damages or other personal remedy or benefit in connection with any such charge or proceeding.

5.     Sherman shall pay any and all taxes that may be due as a result of the Payment.  Sherman understands that the Internal Revenue Service and other taxing authorities may determine that the full amount of the Payment constitutes wages.  Sherman agrees and affirms that he is not relying on any representation made by the Released Parties, by the Released Parties' attorneys, or by any person or entity



~~Keith~~ Sherman initials

Page 3 of 10

related to the Released Parties, concerning whether or not the Payment is taxable as wages, as income, or otherwise, or concerning the amount of taxes that he may be required to pay as a result of the Payment. Sherman agrees that he will not be entitled to any additional consideration under this Agreement as a result of any assessment of, or liability for, taxes as a result of the Payment. Additionally, Sherman agrees to indemnify and hold the Released Parties harmless from and against any liability for any amounts determined by any taxing authority to be owed by the Released Parties on account of the Payment, or on account of Sherman's failure to pay taxes he may owe as a result of the Payment. This indemnification shall also apply to any penalty, interest or other sums, including attorneys' fees and costs that the Released Parties shall incur or owe in connection with or as a result of any such taxes.

6.     Except as provided in Paragraph 1 of this Agreement, Sherman shall bear his own costs, expenses, and attorneys' fees, no matter how accrued or accruing, arising from or relating to the Lawsuit or other events giving rise to this Agreement. Sherman agrees to fully defend and indemnify and hold the Released Parties harmless from and against any liability occasioned by a failure of Sherman or his attorney to reach further satisfactory arrangement regarding distribution of the Payment provided under this Agreement.

7.     In the event that the Released Parties should be required to defend any lawsuit or administrative charge or complaint filed or maintained by or on behalf of Sherman in violation of this Agreement, Sherman shall be liable to the Released Parties for all expenses (including discovery and other court costs and attorneys' fees) incurred in defending the same, regardless of the outcome of the litigation. This Paragraph shall not apply to actions for breach of this Agreement by or on behalf of any Party except for a claim by the Released Parties of a breach of Paragraph Nos. 2, 3 or 4. However, this Paragraph shall not apply to the extent its application would violate the Older Workers' Benefit Protection Act.

8.     The Parties have entered into this Agreement in order to avoid the substantial costs, risks, uncertainties and inconvenience of litigation. The Released Parties deny that they have acted wrongfully

 Keith Sherman initials

toward Sherman, and the execution of this Agreement does not constitute an admission by any of the Released Parties that they have violated any law, statute, rule, regulation or ordinance of the United States, the State of Florida, any other state, or any county or municipality, or that they have breached any of their policies or practices, or that Sherman's claims are meritorious.

9.      Sherman represents that he has had the advice of counsel of his choice and that after having had such advice he agrees and acknowledges that the Payment and this Agreement together constitute a fair and reasonable compromise of his alleged claims against CSI under the Fair Labor Standards Act.

10.      Sherman warrants that he has not assigned, sold, subrogated, transferred, conveyed or pledged as security to anyone any actions, causes of action, claims or demands that he now has or ever had against the Released Parties, and he agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all actions, causes of action, claims or demands that may be brought against them, by anyone to whom Sherman has  assigned, sold, subrogated, transferred, conveyed or pledged as security any such actions, causes of action, claims or demands, whether such are asserted by third-party complaint, cross-claim or otherwise, or whether such are asserted for indemnity, contribution or otherwise.

11.      If, at any time after the execution of this Agreement, it is established that Sherman has violated its terms, the Released Parties shall have the right to seek appropriate relief, including, but not limited to, an injunction restraining further violations.

12.      Sherman agrees, confirms and warrants that:  (a) the only consideration for his execution of this Agreement is that which is stated herein, and there are no other promises or agreements of any kind which have caused him to execute this Agreement; (b) he has not relied on statements or representations by the Released Parties, their agents or representatives, concerning the matters addressed in this Agreement; (c) he has carefully read and fully understands the provisions, meaning and intent of this Agreement, including but not limited to its release and waiver of claims and its final and binding


Keith Sherman initials

effect; (d) the terms of this Agreement are contractual and not mere recitals; (e) he has been given a reasonable period of time within which to consider this Agreement; (f) he has had the benefit of consulting with an attorney of his choice before executing this Agreement; and (g) he knowingly and voluntarily enters into this Agreement.  Notwithstanding anything to the contrary in this Agreement, Sherman is not waiving rights or claims that may arise after execution of this Agreement.

13.     Sherman and his counsel shall complete and sign an Internal Revenue Service W-9 form, and Sherman shall deliver those forms to CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801.  Sherman agrees that CSI may calculate deductions from the payment described in subparagraph 1(a) based on the W-4 form currently on file with CSI.

14.     CSI shall deliver the Payment to Sherman's attorney, Wenzel Fenton Cabassa, P.A., within ten (10) business days following (a) dismissal of the Lawsuit with prejudice and (b) receipt by CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801, of:  (i) a copy of this Agreement with Sherman's signature; and (ii) the W-9 forms described in Paragraph 13 of this Agreement.  However, if the date for delivery falls on a Saturday, Sunday or legal holiday, then CSI shall be deemed to have complied with its obligation to deliver the Payment if it makes delivery on the next business day following the date upon which delivery would otherwise be due.  For purposes of this Agreement, delivery is complete upon sending the Payment by U.S. Mail to Wenzel Fenton Cabassa, P.A. or upon receipt by Wenzel Fenton Cabassa, P.A.

15.     Sherman agrees that any and all documents and evidence gathered or prepared by or on behalf of Sherman in order to advance any claims he has or may have against any of the Released Parties, or to advance any claims described in Paragraph 2 of this Agreement, will be destroyed or retained in a secure place in the offices of Sherman's attorney, and hereby agrees to make a good faith effort to ensure the destruction of any documents or evidence which Sherman or anyone acting on his behalf previously disseminated to non-parties concerning such claims, including consultants, witnesses and investigators.

Keith Sherman initials

16.     Sherman warrants that he is not a Medicare beneficiary as of the date of this Agreement, and that no conditional payments have been made to him by Medicare.  Sherman agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all damages, claims, liens, attorneys' fees or other amounts that may be due or claimed to be due on account of any Medicare claims by him, or any Medicare payments or conditional payments to him or for his benefit.

17.     This Agreement may be executed in multiple counterparts, each of which shall be deemed to constitute an original.

18.     This Agreement and all terms thereof shall be construed and governed according to the laws of Florida.

19.     The waiver by any Party of a breach of any provision of this Agreement by any other Party shall not operate or be construed as a waiver of any subsequent breach of that or any other provision by said Party.

20.     The rights and obligations of Sherman and the Released Parties under this Agreement shall inure to the benefit of and shall be binding upon their respective successors and assigns.

21.     Sherman agrees, confirms and warrants that there exist no other agreements, oral or written, between Sherman and any of the Released Parties and relating to any of the alleged claims covered by this Agreement, and agrees that this Agreement supersedes any and all prior or contemporaneous agreements, written or verbal, or any other understandings that exist or may have existed between Sherman and any of the Released Parties with respect to the alleged claims covered by this Agreement.

22.     This Agreement may not be altered, amended, modified, or terminated except by an instrument in writing, executed by the Parties hereto or their authorized representatives.

23.     The Parties agree that if enforcement of any term of this Agreement would impose a limitation that is contrary to applicable law, then said term shall be construed to provide only as broad a limitation as the law allows (if any), and no broader limitation, and the remainder of this Agreement will


Keith Sherman initials

continue to be valid and enforceable, unless such construction shall deprive either Party of the substantial benefit of its bargain.  The Parties further agree that if any provision in this Agreement is invalid, illegal or unenforceable, and if application of the first sentence of this Paragraph does not render the provision lawful, valid and enforceable, then said provision will be severed herefrom, and the remainder of this Agreement will continue to be valid and enforceable unless severance of said provision deprives a Party of the substantial benefit of its bargain.  The Parties agree, however, that any determination by any federal, state or local authority regarding treatment of the Payment, terms or consideration of this Agreement under any laws regarding taxation shall not constitute an event depriving any Party of the substantial benefit of its bargain.

24.     THE UNDERSIGNED STATE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT AND KNOW AND UNDERSTAND ITS CONTENTS, AND THAT THEY EXECUTED THIS AGREEMENT AS THEIR FREE ACT AND DEED.

25.     **BY SIGNING BELOW, THE PARTIES SIGNIFY THEIR INTENT TO BE BOUND BY ALL TERMS OF THIS AGREEMENT.**

Keith Sherman initials

Keith Sherman

_____

Signature

Date: _____

Keith Sherman initials

**Charley's Steakhouse – Cypress Street, Inc.**

By: _____

Its: ___SEC / TREAS_____

Date: _06/14/16_____

KS ———Keith Sherman initials

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "Agreement") is made by and between Charley's Steakhouse – Cypress Street, Inc. ("CSI") and Michael Abraham ("Abraham") (collectively, the "Parties").

WHEREAS, Abraham filed a lawsuit in the United States District Court, Middle District of Florida, Tampa Division, styled "Keith Sherman, Michael Abraham, Sidney Jones and William Byrd, Plaintiffs, v. Charley's Steakhouse-Cypress Street, Inc. Talk of the Town Restaurants, Inc., Defendant," Case No. 8:15-CV-01824-RAL-AEP (the "Lawsuit");

WHEREAS, CSI has denied any and all liability for the alleged claims and causes of action in the Lawsuit; and

WHEREAS, the Parties desire to settle the Lawsuit and all other alleged claims arising from alleged non-payment or allegedly improper payment of wages in order to avoid the cost and distraction of litigation;

NOW, THEREFORE, in exchange for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, CSI and Abraham agree as follows:

## ADDITIONAL DEFINITIONS

A.      Released Parties -- When used in this Agreement, "Released Parties" means the following persons and entities, individually, collectively, and in any combination:

(1)     Talk of the Town Restaurants, Inc. and Charley's Steakhouse – Cypress Street, Inc., and all of their respective past, present and future divisions, parents, subsidiaries, and affiliated entities;

(2)     All of the predecessors, successors and assigns of the entities listed in subparagraph (A)(1);

(3)     All of the past, present and future employees, officers, directors, managers, supervisors, agents, shareholders, owners, servants, partners, independent contractors, accountants, insurers, benefits plans, third party administrators, attorneys and representatives of the entities and persons listed in subparagraphs (A)(1) and (A)(2); and

*M.A.*   Michael Abraham initials

(4)    The heirs, assigns, trustees, successors, agents and representatives of the entities and persons listed in subparagraphs (A)(1), (A)(2) and (A)(3).

B.    Parties -- When used in this Agreement, "Parties" means Abraham and CSI.

**COVENANTS**

1.    CSI shall pay the total sum of Seven Thousand, Seven Hundred Twelve Dollars and Forty-seven Cents ($7,712.47) to Abraham pursuant to this Agreement (the "Payment").  The Payment shall be made by issuance of three checks payable as follows:  (a) one check in the amount of Two Thousand, Eight Hundred Seventy-one Dollars and Twenty-four Cents ($2,871.24), as wages, <u>less</u> <u>applicable deductions</u>, made payable to "Michael Abraham" and for which CSI shall issue a W-2 form; (b) one check in the amount of Two Thousand, Three Hundred Forty-one  Dollars and Twenty-three Cents ($2,341.23), made payable to "Michael Abraham" and for which CSI shall issue a 1099 Form; and (c) one check in the amount of Two Thousand, Five Hundred Dollars and no Cents ($2,500.00) for attorneys' fees and costs, made payable to Wenzel Fenton Cabassa, P.A., and for which CSI shall issue a 1099 Form.  CSI shall be deemed to have complied with the terms of Paragraph 1 of this Agreement upon delivery of the Payment (within the time and in the manner established by Paragraph 14 of this Agreement) to Abraham's attorneys, Wenzel Fenton Cabassa, P.A.  CSI agrees that attorneys' fees and costs were discussed separately from the amounts payable to Abraham.

2.    Abraham hereby fully, finally and forever releases and discharges the Released Parties from any and all claims, liabilities, charges, demands, actions, causes of action, and suits of any kind arising from alleged non-payment or allegedly improper payment of wages, including claims under the Fair Labor Standards Act (FLSA); the Florida Minimum Wage Act, the Florida Constitution and any related contract or unjust enrichment claims related to amount of time worked and payment of wages, including claims for any type of damages or relief whatsoever, including, but not limited to, all claims for legal relief, all claims for equitable relief, and all claims for: back pay; front pay; tips; bonuses; incentive pay; commissions; salary; overtime compensation; other wages; other compensation; other money damages; reinstatement; continuation of insurance coverage; benefits under any employee benefit plan;

M.A. Michael Abraham initials

medical or income benefits or payments; relocation expenses; any other fringe benefits; injunctive relief; equitable relief; declaratory relief; statutory damages, liquidated damages; compensatory damages; exemplary damages; consequential damages; punitive damages; attorneys' fees; costs; expenses; expert witness fees; interest; penalties; and any and all other claims for relief or damages.

3.      Abraham agrees to the dismissal with prejudice all of his claims in the Lawsuit. The parties agree to file a motion for court approval of their settlement and further to do anything else necessary to effect the dismissal with prejudice of those claims, with each Party to bear his or its own attorneys' fees and costs. If, for any reason, Abraham's claims in the Lawsuit are not dismissed with prejudice, then CSI shall have the option of declaring this Agreement null and void, and upon such a declaration Abraham shall promptly return to CSI the full amount of the Payment and the Parties shall be restored to the *status quo ante*.

4.      Abraham further agrees that he will not appeal the dismissal of the Lawsuit, and that he will not file any additional claims, charges, administrative proceedings, lawsuits or other actions against CSI or any of the Released Parties based upon any events occurring prior to the execution of this Agreement. Abraham affirms and represents that other than the Lawsuit, he has not filed or made any complaints, charges or claims of any nature whatsoever against any of the Released Parties, and that he has no knowledge of any complaint, charge or claim having been filed or brought on his behalf. If Abraham learns of any such complaint, charge or claim, he shall promptly request withdrawal of the complaint, charge or claim. Notwithstanding anything to the contrary in this Agreement, this Agreement shall not limit any right Abraham may have to file a charge or participate in a proceeding with the EEOC or NLRB, *however*, Abraham waives and releases any right he may have to damages or other personal remedy or benefit in connection with any such charge or proceeding.

5.      Abraham shall pay any and all taxes that may be due as a result of the Payment. Abraham understands that the Internal Revenue Service and other taxing authorities may determine that the full amount of the Payment constitutes wages. Abraham agrees and affirms that he is not relying on

M.A.  Michael Abraham initials

any representation made by the Released Parties, by the Released Parties' attorneys, or by any person or entity related to the Released Parties, concerning whether or not the Payment is taxable as wages, as income, or otherwise, or concerning the amount of taxes that he may be required to pay as a result of the Payment. Abraham agrees that he will not be entitled to any additional consideration under this Agreement as a result of any assessment of, or liability for, taxes as a result of the Payment. Additionally, Abraham agrees to indemnify and hold the Released Parties harmless from and against any liability for any amounts determined by any taxing authority to be owed by the Released Parties on account of the Payment, or on account of Abraham's failure to pay taxes he may owe as a result of the Payment. This indemnification shall also apply to any penalty, interest or other sums, including attorneys' fees and costs that the Released Parties shall incur or owe in connection with or as a result of any such taxes.

6.     Except as provided in Paragraph 1 of this Agreement, Abraham shall bear his own costs, expenses, and attorneys' fees, no matter how accrued or accruing, arising from or relating to the Lawsuit or other events giving rise to this Agreement. Abraham agrees to fully defend and indemnify and hold the Released Parties harmless from and against any liability occasioned by a failure of Abraham or his attorney to reach further satisfactory arrangement regarding distribution of the Payment provided under this Agreement.

7.     In the event that the Released Parties should be required to defend any lawsuit or administrative charge or complaint filed or maintained by or on behalf of Abraham in violation of this Agreement, Abraham shall be liable to the Released Parties for all expenses (including discovery and other court costs and attorneys' fees) incurred in defending the same, regardless of the outcome of the litigation. This Paragraph shall not apply to actions for breach of this Agreement by or on behalf of any Party except for a claim by the Released Parties of a breach of Paragraph Nos. 2, 3 or 4. However, this Paragraph shall not apply to the extent its application would violate the Older Workers' Benefit Protection Act.

M.A.  Michael Abraham initials

8.      The Parties have entered into this Agreement in order to avoid the substantial costs, risks, uncertainties and inconvenience of litigation.  The Released Parties deny that they have acted wrongfully toward Abraham, and the execution of this Agreement does not constitute an admission by any of the Released Parties that they have violated any law, statute, rule, regulation or ordinance of the United States, the State of Florida, any other state, or any county or municipality, or that they have breached any of their policies or practices, or that Abraham's claims are meritorious.

9.      Abraham represents that he has had the advice of counsel of his choice and that after having had such advice he agrees and acknowledges that the Payment and this Agreement together constitute a fair and reasonable compromise of his alleged claims against CSI under the Fair Labor Standards Act.

10.      Abraham warrants that he has not assigned, sold, subrogated, transferred, conveyed or pledged as security to anyone any actions, causes of action, claims or demands that he now has or ever had against the Released Parties, and he agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all actions, causes of action, claims or demands that may be brought against them, by anyone to whom Abraham has assigned, sold, subrogated, transferred, conveyed or pledged as security any such actions, causes of action, claims or demands, whether such are asserted by third-party complaint, cross-claim or otherwise, or whether such are asserted for indemnity, contribution or otherwise.

11.      If, at any time after the execution of this Agreement, it is established that Abraham has violated its terms, the Released Parties shall have the right to seek appropriate relief, including, but not limited to, an injunction restraining further violations.

12.      Abraham agrees, confirms and warrants that:  (a) the only consideration for his execution of this Agreement is that which is stated herein, and there are no other promises or agreements of any kind which have caused him to execute this Agreement; (b) he has not relied on statements or representations by the Released Parties, their agents or representatives, concerning the matters addressed

M.A.  Michael Abraham initials

in this Agreement; (c) he has carefully read and fully understands the provisions, meaning and intent of this Agreement, including but not limited to its release and waiver of claims and its final and binding effect; (d) the terms of this Agreement are contractual and not mere recitals; (e) he has been given a reasonable period of time within which to consider this Agreement; (f) he has had the benefit of consulting with an attorney of his choice before executing this Agreement; and (g) he knowingly and voluntarily enters into this Agreement.  Notwithstanding anything to the contrary in this Agreement, Abraham is not waiving rights or claims that may arise after execution of this Agreement.

13.     Abraham and his counsel shall complete and sign an Internal Revenue Service W-9 form, and Abraham shall deliver those forms to CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801.  Abraham agrees that CSI may calculate deductions from the payment described in subparagraph 1(a) based on the W-4 form currently on file with CSI.

14.     CSI shall deliver the Payment to Abraham's attorney, Wenzel Fenton Cabassa, P.A., within ten (10) business days following (a) dismissal of the Lawsuit with prejudice and (b) receipt by CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801, of:  (i) a copy of this Agreement with Abraham's signature; and (ii) the W-9 forms described in Paragraph 13 of this Agreement.  However, if the date for delivery falls on a Saturday, Sunday or legal holiday, then CSI shall be deemed to have complied with its obligation to deliver the Payment if it makes delivery on the next business day following the date upon which delivery would otherwise be due.  For purposes of this Agreement, delivery is complete upon sending the Payment by U.S. Mail to Wenzel Fenton Cabassa, P.A. or upon receipt by Wenzel Fenton Cabassa, P.A.

15.     Abraham agrees that any and all documents and evidence gathered or prepared by or on behalf of Abraham in order to advance any claims he has or may have against any of the Released Parties, or to advance any claims described in Paragraph 2 of this Agreement, will be destroyed or retained in a secure place in the offices of Abraham's attorney, and hereby agrees to make a good faith effort to ensure

MA.   Michael Abraham initials

the destruction of any documents or evidence which Abraham or anyone acting on his behalf previously disseminated to non-parties concerning such claims, including consultants, witnesses and investigators.

16.      Abraham warrants that he is not a Medicare beneficiary as of the date of this Agreement, and that no conditional payments have been made to him by Medicare.  Abraham agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all damages, claims, liens, attorneys' fees or other amounts that may be due or claimed to be due on account of any Medicare claims by him, or any Medicare payments or conditional payments to him or for his benefit.

17.      This Agreement may be executed in multiple counterparts, each of which shall be deemed to constitute an original.

18.      This Agreement and all terms thereof shall be construed and governed according to the laws of Florida.

19.      The waiver by any Party of a breach of any provision of this Agreement by any other Party shall not operate or be construed as a waiver of any subsequent breach of that or any other provision by said Party.

20.      The rights and obligations of Abraham and the Released Parties under this Agreement shall inure to the benefit of and shall be binding upon their respective successors and assigns.

21.      Abraham agrees, confirms and warrants that there exist no other agreements, oral or written, between Abraham and any of the Released Parties and relating to any of the alleged claims covered by this Agreement, and agrees that this Agreement supersedes any and all prior or contemporaneous agreements, written or verbal, or any other understandings that exist or may have existed between Abraham and any of the Released Parties with respect to the alleged claims covered by this Agreement.

22.      This Agreement may not be altered, amended, modified, or terminated except by an instrument in writing, executed by the Parties hereto or their authorized representatives.

M.A.  Michael Abraham initials

23.    The Parties agree that if enforcement of any term of this Agreement would impose a limitation that is contrary to applicable law, then said term shall be construed to provide only as broad a limitation as the law allows (if any), and no broader limitation, and the remainder of this Agreement will continue to be valid and enforceable, unless such construction shall deprive either Party of the substantial benefit of its bargain.  The Parties further agree that if any provision in this Agreement is invalid, illegal or unenforceable, and if application of the first sentence of this Paragraph does not render the provision lawful, valid and enforceable, then said provision will be severed herefrom, and the remainder of this Agreement will continue to be valid and enforceable unless severance of said provision deprives a Party of the substantial benefit of its bargain.  The Parties agree, however, that any determination by any federal, state or local authority regarding treatment of the Payment, terms or consideration of this Agreement under any laws regarding taxation shall not constitute an event depriving any Party of the substantial benefit of its bargain.

24.    THE UNDERSIGNED STATE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT AND KNOW AND UNDERSTAND ITS CONTENTS, AND THAT THEY EXECUTED THIS AGREEMENT AS THEIR FREE ACT AND DEED.

25.    **BY SIGNING BELOW, THE PARTIES SIGNIFY THEIR INTENT TO BE BOUND BY ALL TERMS OF THIS AGREEMENT.**

M.A.  Michael Abraham initials

Michael Abraham

_____
**Signature**

Date: _____5 / 10 / 1b_____

___M.A.___ Michael Abraham initials

**Charley's Steakhouse – Cypress Street, Inc.**

By: _____

Its: Sec | Treas _____

Date: 06/14/16 _____

WSACTIVELLP:8371885.1

M.A.  Michael Abraham initials

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "Agreement") is made by and between Charley's Steakhouse – Cypress Street, Inc. ("CSI") and William Byrd ("Byrd") (collectively, the "Parties").

WHEREAS, Byrd filed a lawsuit in the United States District Court, Middle District of Florida, Tampa Division, styled "Keith Sherman, Michael Abraham, Sidney Jones and William Byrd, Plaintiffs, v. Charley's Steakhouse-Cypress Street, Inc. Talk of the Town Restaurants, Inc., Defendant," Case No. 8:15-CV-01824-RAL-AEP (the "Lawsuit");

WHEREAS, CSI has denied any and all liability for the alleged claims and causes of action in the Lawsuit; and

WHEREAS, the Parties desire to settle the Lawsuit and all other alleged claims arising from alleged non-payment or allegedly improper payment of wages in order to avoid the cost and distraction of litigation;

NOW, THEREFORE, in exchange for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, CSI and Byrd agree as follows:

## ADDITIONAL DEFINITIONS

A.      Released Parties -- When used in this Agreement, "Released Parties" means the following persons and entities, individually, collectively, and in any combination:

(1)     Talk of the Town Restaurants, Inc. and Charley's Steakhouse – Cypress Street, Inc., and all of their respective past, present and future divisions, parents, subsidiaries, and affiliated entities;

(2)     All of the predecessors, successors and assigns of the entities listed in subparagraph (A)(1);

(3)     All of the past, present and future employees, officers, directors, managers, supervisors, agents, shareholders, owners, servants, partners, independent contractors, accountants, insurers, benefits plans, third party administrators, attorneys and representatives of the entities and persons listed in subparagraphs (A)(1) and (A)(2); and

(4)     The heirs, assigns, trustees, successors, agents and representatives of the entities and persons listed in subparagraphs (A)(1), (A)(2) and (A)(3).

 William Byrd initials

Page 1 of 10

B.      Parties -- When used in this Agreement, "Parties" means Byrd and CSI.

## COVENANTS

1.      CSI shall pay the total sum of Seven Thousand, Nine Hundred Twenty-eight Dollars and Twenty Cents ($7,928.20) to Byrd pursuant to this Agreement (the "Payment"). The Payment shall be made by issuance of three checks payable as follows: (a) one check in the amount of Two Thousand, Nine Hundred Ninety-one Dollars and Sixty Cents ($2,991.60), as wages, <u>less applicable deductions</u>, made payable to "William Byrd" and for which CSI shall issue a W-2 form; (b) one check in the amount of Two Thousand, Four Hundred Thirty-six Dollars and Sixty Cents ($2,436.60), made payable to "William Byrd" and for which CSI shall issue a 1099 Form; and (c) one check in the amount of Two Thousand, Five Hundred Dollars and no Cents ($2,500.00) for attorneys' fees and costs, made payable to Wenzel Fenton Cabassa, P.A., and for which CSI shall issue a 1099 Form. CSI shall be deemed to have complied with the terms of Paragraph 1 of this Agreement upon delivery of the Payment (within the time and in the manner established by Paragraph 14 of this Agreement) to Byrd's attorneys, Wenzel Fenton Cabassa, P.A. CSI agrees that attorneys' fees and costs were discussed separately from the amounts payable to Byrd.

2.      Byrd hereby fully, finally and forever releases and discharges the Released Parties from any and all claims, liabilities, charges, demands, actions, causes of action, and suits of any kind arising from alleged non-payment or allegedly improper payment of wages, including claims under the Fair Labor Standards Act (FLSA); the Florida Minimum Wage Act, the Florida Constitution and any related contract or unjust enrichment claims related to amount of time worked and payment of wages, including claims for any type of damages or relief whatsoever, including, but not limited to, all claims for legal relief, all claims for equitable relief, and all claims for: back pay; front pay; tips; bonuses; incentive pay; commissions; salary; overtime compensation; other wages; other compensation; other money damages; reinstatement; continuation of insurance coverage; benefits under any employee benefit plan; medical or income benefits or payments; relocation expenses; any other fringe benefits; injunctive relief; equitable

 William Byrd initials

Page 2 of 10

relief; declaratory relief; statutory damages, liquidated damages; compensatory damages; exemplary damages; consequential damages; punitive damages; attorneys' fees; costs; expenses; expert witness fees; interest; penalties; and any and all other claims for relief or damages.

3.      Byrd agrees to the dismissal with prejudice all of his claims in the Lawsuit.  The parties agree to file a motion for court approval of their settlement and further to do anything else necessary to effect the dismissal with prejudice of those claims, with each Party to bear his or its own attorneys' fees and costs.  If, for any reason, Byrd's claims in the Lawsuit are not dismissed with prejudice, then CSI shall have the option of declaring this Agreement null and void, and upon such a declaration Byrd shall promptly return to CSI the full amount of the Payment and the Parties shall be restored to the *status quo ante*.

4.      Byrd further agrees that he will not appeal the dismissal of the Lawsuit, and that he will not file any additional claims, charges, administrative proceedings, lawsuits or other actions against CSI or any of the Released Parties based upon any events occurring prior to the execution of this Agreement. Byrd affirms and represents that other than the Lawsuit, he has not filed or made any complaints, charges or claims of any nature whatsoever against any of the Released Parties, and that he has no knowledge of any complaint, charge or claim having been filed or brought on his behalf.  If Byrd learns of any such complaint, charge or claim, he shall promptly request withdrawal of the complaint, charge or claim. Notwithstanding anything to the contrary in this Agreement, this Agreement shall not limit any right Byrd may have to file a charge or participate in a proceeding with the EEOC or NLRB, *however*, Byrd waives and releases any right he may have to damages or other personal remedy or benefit in connection with any such charge or proceeding.

5.      Byrd shall pay any and all taxes that may be due as a result of the Payment.  Byrd understands that the Internal Revenue Service and other taxing authorities may determine that the full amount of the Payment constitutes wages.  Byrd agrees and affirms that he is not relying on any representation made by the Released Parties, by the Released Parties' attorneys, or by any person or entity

 William Byrd initials

Page 3 of 10

related to the Released Parties, concerning whether or not the Payment is taxable as wages, as income, or otherwise, or concerning the amount of taxes that he may be required to pay as a result of the Payment. Byrd agrees that he will not be entitled to any additional consideration under this Agreement as a result of any assessment of, or liability for, taxes as a result of the Payment. Additionally, Byrd agrees to indemnify and hold the Released Parties harmless from and against any liability for any amounts determined by any taxing authority to be owed by the Released Parties on account of the Payment, or on account of Byrd's failure to pay taxes he may owe as a result of the Payment. This indemnification shall also apply to any penalty, interest or other sums, including attorneys' fees and costs that the Released Parties shall incur or owe in connection with or as a result of any such taxes.

6.      Except as provided in Paragraph 1 of this Agreement, Byrd shall bear his own costs, expenses, and attorneys' fees, no matter how accrued or accruing, arising from or relating to the Lawsuit or other events giving rise to this Agreement. Byrd agrees to fully defend and indemnify and hold the Released Parties harmless from and against any liability occasioned by a failure of Byrd or his attorney to reach further satisfactory arrangement regarding distribution of the Payment provided under this Agreement.

7.      In the event that the Released Parties should be required to defend any lawsuit or administrative charge or complaint filed or maintained by or on behalf of Byrd in violation of this Agreement, Byrd shall be liable to the Released Parties for all expenses (including discovery and other court costs and attorneys' fees) incurred in defending the same, regardless of the outcome of the litigation. This Paragraph shall not apply to actions for breach of this Agreement by or on behalf of any Party except for a claim by the Released Parties of a breach of Paragraph Nos. 2, 3 or 4. However, this Paragraph shall not apply to the extent its application would violate the Older Workers' Benefit Protection Act.

8.      The Parties have entered into this Agreement in order to avoid the substantial costs, risks, uncertainties and inconvenience of litigation. The Released Parties deny that they have acted wrongfully toward Byrd, and the execution of this Agreement does not constitute an admission by any of the


William Byrd initials

Page 4 of 10

Released Parties that they have violated any law, statute, rule, regulation or ordinance of the United States, the State of Florida, any other state, or any county or municipality, or that they have breached any of their policies or practices, or that Byrd's claims are meritorious.

9.    Byrd represents that he has had the advice of counsel of his choice and that after having had such advice he agrees and acknowledges that the Payment and this Agreement together constitute a fair and reasonable compromise of his alleged claims against CSI under the Fair Labor Standards Act.

10.    Byrd warrants that he has not assigned, sold, subrogated, transferred, conveyed or pledged as security to anyone any actions, causes of action, claims or demands that he now has or ever had against the Released Parties, and he agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all actions, causes of action, claims or demands that may be brought against them, by anyone to whom Byrd has assigned, sold, subrogated, transferred, conveyed or pledged as security any such actions, causes of action, claims or demands, whether such are asserted by third-party complaint, cross-claim or otherwise, or whether such are asserted for indemnity, contribution or otherwise.

11.    If, at any time after the execution of this Agreement, it is established that Byrd has violated its terms, the Released Parties shall have the right to seek appropriate relief, including, but not limited to, an injunction restraining further violations.

12.    Byrd agrees, confirms and warrants that:  (a) the only consideration for his execution of this Agreement is that which is stated herein, and there are no other promises or agreements of any kind which have caused him to execute this Agreement; (b) he has not relied on statements or representations by the Released Parties, their agents or representatives, concerning the matters addressed in this Agreement; (c) he has carefully read and fully understands the provisions, meaning and intent of this Agreement, including but not limited to its release and waiver of claims and its final and binding effect; (d) the terms of this Agreement are contractual and not mere recitals; (e) he has been given a reasonable period of time within which to consider this Agreement; (f) he has had the benefit of consulting with an



Page 5 of 10

attorney of his choice before executing this Agreement; and (g) he knowingly and voluntarily enters into this Agreement.  Notwithstanding anything to the contrary in this Agreement, Byrd is not waiving rights or claims that may arise after execution of this Agreement.

13.     Byrd and his counsel shall complete and sign an Internal Revenue Service W-9 form, and Byrd shall deliver those forms to CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801.  Byrd agrees that CSI may calculate deductions from the payment described in subparagraph 1(a) based on the W-4 form currently on file with CSI.

14.     CSI shall deliver the Payment to Byrd's attorney, Wenzel Fenton Cabassa, P.A., within ten (10) business days following (a) dismissal of the Lawsuit with prejudice and (b) receipt by CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801, of:  (i) a copy of this Agreement with Byrd's signature; and (ii) the W-9 forms described in Paragraph 13 of this Agreement.  However, if the date for delivery falls on a Saturday, Sunday or legal holiday, then CSI shall be deemed to have complied with its obligation to deliver the Payment if it makes delivery on the next business day following the date upon which delivery would otherwise be due.  For purposes of this Agreement, delivery is complete upon sending the Payment by U.S. Mail to Wenzel Fenton Cabassa, P.A. or upon receipt by Wenzel Fenton Cabassa, P.A.

15.     Byrd agrees that any and all documents and evidence gathered or prepared by or on behalf of Byrd in order to advance any claims he has or may have against any of the Released Parties, or to advance any claims described in Paragraph 2 of this Agreement, will be destroyed or retained in a secure place in the offices of Byrd's attorney, and hereby agrees to make a good faith effort to ensure the destruction of any documents or evidence which Byrd or anyone acting on his behalf previously disseminated to non-parties concerning such claims, including consultants, witnesses and investigators.

16.     Byrd warrants that he is not a Medicare beneficiary as of the date of this Agreement, and that no conditional payments have been made to him by Medicare.  Byrd agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all damages, claims, liens,



Page 6 of 10

attorneys' fees or other amounts that may be due or claimed to be due on account of any Medicare claims by him, or any Medicare payments or conditional payments to him or for his benefit.

17.     This Agreement may be executed in multiple counterparts, each of which shall be deemed to constitute an original.

18.     This Agreement and all terms thereof shall be construed and governed according to the laws of Florida.

19.     The waiver by any Party of a breach of any provision of this Agreement by any other Party shall not operate or be construed as a waiver of any subsequent breach of that or any other provision by said Party.

20.     The rights and obligations of Byrd and the Released Parties under this Agreement shall inure to the benefit of and shall be binding upon their respective successors and assigns.

21.     Byrd agrees, confirms and warrants that there exist no other agreements, oral or written, between Byrd and any of the Released Parties and relating to any of the alleged claims covered by this Agreement, and agrees that this Agreement supersedes any and all prior or contemporaneous agreements, written or verbal, or any other understandings that exist or may have existed between Byrd and any of the Released Parties with respect to the alleged claims covered by this Agreement.

22.     This Agreement may not be altered, amended, modified, or terminated except by an instrument in writing, executed by the Parties hereto or their authorized representatives.

23.     The Parties agree that if enforcement of any term of this Agreement would impose a limitation that is contrary to applicable law, then said term shall be construed to provide only as broad a limitation as the law allows (if any), and no broader limitation, and the remainder of this Agreement will continue to be valid and enforceable, unless such construction shall deprive either Party of the substantial benefit of its bargain. The Parties further agree that if any provision in this Agreement is invalid, illegal or unenforceable, and if application of the first sentence of this Paragraph does not render the provision lawful, valid and enforceable, then said provision will be severed herefrom, and the remainder of this

 William Byrd initials

Agreement will continue to be valid and enforceable unless severance of said provision deprives a Party of the substantial benefit of its bargain.  The Parties agree, however, that any determination by any federal, state or local authority regarding treatment of the Payment, terms or consideration of this Agreement under any laws regarding taxation shall not constitute an event depriving any Party of the substantial benefit of its bargain.

24.    THE UNDERSIGNED STATE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT AND KNOW AND UNDERSTAND ITS CONTENTS, AND THAT THEY EXECUTED THIS AGREEMENT AS THEIR FREE ACT AND DEED.

25.    **BY SIGNING BELOW, THE PARTIES SIGNIFY THEIR INTENT TO BE BOUND BY ALL TERMS OF THIS AGREEMENT.**

 William Byrd initials

**William Byrd**

**Signature**

**Date:** 5/14/2016

William Byrd initials

**Charley's Steakhouse – Cypress Street, Inc.**

By: _____

Its: _____SEC ITREAS_____

Date: __06 / 14 / 16_____
WSACTIVELLP:8372093.1

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "Agreement") is made by and between Charley's Steakhouse – Cypress Street, Inc. ("CSI") and Youssef Ch-Hab ("Ch-Hab") (collectively, the "Parties").

WHEREAS, Ch-Hab filed a lawsuit in the United States District Court, Middle District of Florida, Tampa Division, styled "Keith Sherman, Michael Abraham, Sidney Jones and William Byrd, Plaintiffs, v. Charley's Steakhouse-Cypress Street, Inc. Talk of the Town Restaurants, Inc., Defendant," Case No. 8:15-CV-01824-RAL-AEP (the "Lawsuit");

WHEREAS, CSI has denied any and all liability for the alleged claims and causes of action in the Lawsuit; and

WHEREAS, the Parties desire to settle the Lawsuit and all other alleged claims arising from alleged non-payment or allegedly improper payment of wages in order to avoid the cost and distraction of litigation;

NOW, THEREFORE, in exchange for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, CSI and Ch-Hab agree as follows:

## ADDITIONAL DEFINITIONS

A.    Released Parties -- When used in this Agreement, "Released Parties" means the following persons and entities, individually, collectively, and in any combination:

      (1)    Talk of the Town Restaurants, Inc. and Charley's Steakhouse – Cypress Street, Inc., and all of their respective past, present and future divisions, parents, subsidiaries, and affiliated entities;

      (2)    All of the predecessors, successors and assigns of the entities listed in subparagraph (A)(1);

      (3)    All of the past, present and future employees, officers, directors, managers, supervisors, agents, shareholders, owners, servants, partners, independent contractors, accountants, insurers, benefits plans, third party administrators, attorneys and representatives of the entities and persons listed in subparagraphs (A)(1) and (A)(2); and

      (4)    The heirs, assigns, trustees, successors, agents and representatives of the entities and persons listed in subparagraphs (A)(1), (A)(2) and (A)(3).

YC  Youssef Ch-Hab initials

B.     Parties -- When used in this Agreement, "Parties" means Ch-Hab and CSI.

## COVENANTS

1.     CSI shall pay the total sum of Three Thousand, Two Hundred Seven Dollars and Eight Cents ($3,207.08) to Ch-Hab pursuant to this Agreement (the "Payment"). The Payment shall be made by issuance of three checks payable as follows: (a) one check in the amount of Three Hundred Ninety-One Dollars and Four Cents ($391.04), as wages, less applicable deductions, made payable to "Youssef Ch-Hab" and for which CSI shall issue a W-2 form; (b) one check in the amount of Three Hundred Sixteen Dollars and Four Cents ($316.04), made payable to "Youssef Ch-Hab" and for which CSI shall issue a 1099 Form; and (c) one check in the amount of Two Thousand, Five Hundred Dollars and no Cents ($2,500.00) for attorneys' fees and costs, made payable to Wenzel Fenton Cabassa, P.A., and for which CSI shall issue a 1099 Form. CSI shall be deemed to have complied with the terms of Paragraph 1 of this Agreement upon delivery of the Payment (within the time and in the manner established by Paragraph 14 of this Agreement) to Ch-Hab's attorneys, Wenzel Fenton Cabassa, P.A. CSI agrees that attorneys' fees and costs were discussed separately from the amounts payable to Ch-Hab.

2.     Ch-Hab hereby fully, finally and forever releases and discharges the Released Parties from any and all claims, liabilities, charges, demands, actions, causes of action, and suits of any kind arising from alleged non-payment or allegedly improper payment of wages, including claims under the Fair Labor Standards Act (FLSA); the Florida Minimum Wage Act, the Florida Constitution and any related contract or unjust enrichment claims related to amount of time worked and payment of wages, including claims for any type of damages or relief whatsoever, including, but not limited to, all claims for legal relief, all claims for equitable relief, and all claims for: back pay; front pay; tips; bonuses; incentive pay; commissions; salary; overtime compensation; other wages; other compensation; other money damages; reinstatement; continuation of insurance coverage; benefits under any employee benefit plan; medical or income benefits or payments; relocation expenses; any other fringe benefits; injunctive relief; equitable relief; declaratory relief; statutory damages, liquidated damages; compensatory damages;

Yc
_____ Youssef Ch-Hab initials                Page 2 of 10

exemplary damages; consequential damages; punitive damages; attorneys' fees; costs; expenses; expert witness fees; interest; penalties; and any and all other claims for relief or damages.

3.      Ch-Hab agrees to the dismissal with prejudice all of his claims in the Lawsuit.  The parties agree to file a motion for court approval of their settlement and further to do anything else necessary to effect the dismissal with prejudice of those claims, with each Party to bear his or its own attorneys' fees and costs.  If, for any reason, Ch-Hab's claims in the Lawsuit are not dismissed with prejudice, then CSI shall have the option of declaring this Agreement null and void, and upon such a declaration Ch-Hab shall promptly return to CSI the full amount of the Payment and the Parties shall be restored to the *status quo ante*.

4.      Ch-Hab further agrees that he will not appeal the dismissal of the Lawsuit, and that he will not file any additional claims, charges, administrative proceedings, lawsuits or other actions against CSI or any of the Released Parties based upon any events occurring prior to the execution of this Agreement.  Ch-Hab affirms and represents that other than the Lawsuit, he has not filed or made any complaints, charges or claims of any nature whatsoever against any of the Released Parties, and that he has no knowledge of any complaint, charge or claim having been filed or brought on his behalf.  If Ch-Hab learns of any such complaint, charge or claim, he shall promptly request withdrawal of the complaint, charge or claim.  Notwithstanding anything to the contrary in this Agreement, this Agreement shall not limit any right Ch-Hab may have to file a charge or participate in a proceeding with the EEOC or NLRB, *however*, Ch-Hab waives and releases any right he may have to damages or other personal remedy or benefit in connection with any such charge or proceeding.

5.      Ch-Hab shall pay any and all taxes that may be due as a result of the Payment.  Ch-Hab understands that the Internal Revenue Service and other taxing authorities may determine that the full amount of the Payment constitutes wages.  Ch-Hab agrees and affirms that he is not relying on any representation made by the Released Parties, by the Released Parties' attorneys, or by any person or entity related to the Released Parties, concerning whether or not the Payment is taxable as wages, as income, or

otherwise, or concerning the amount of taxes that he may be required to pay as a result of the Payment. Ch-Hab agrees that he will not be entitled to any additional consideration under this Agreement as a result of any assessment of, or liability for, taxes as a result of the Payment. Additionally, Ch-Hab agrees to indemnify and hold the Released Parties harmless from and against any liability for any amounts determined by any taxing authority to be owed by the Released Parties on account of the Payment, or on account of Ch-Hab's failure to pay taxes he may owe as a result of the Payment. This indemnification shall also apply to any penalty, interest or other sums, including attorneys' fees and costs that the Released Parties shall incur or owe in connection with or as a result of any such taxes.

6.      Except as provided in Paragraph 1 of this Agreement, Ch-Hab shall bear his own costs, expenses, and attorneys' fees, no matter how accrued or accruing, arising from or relating to the Lawsuit or other events giving rise to this Agreement. Ch-Hab agrees to fully defend and indemnify and hold the Released Parties harmless from and against any liability occasioned by a failure of Ch-Hab or his attorney to reach further satisfactory arrangement regarding distribution of the Payment provided under this Agreement.

7.      In the event that the Released Parties should be required to defend any lawsuit or administrative charge or complaint filed or maintained by or on behalf of Ch-Hab in violation of this Agreement, Ch-Hab shall be liable to the Released Parties for all expenses (including discovery and other court costs and attorneys' fees) incurred in defending the same, regardless of the outcome of the litigation. This Paragraph shall not apply to actions for breach of this Agreement by or on behalf of any Party except for a claim by the Released Parties of a breach of Paragraph Nos. 2, 3 or 4. However, this Paragraph shall not apply to the extent its application would violate the Older Workers' Benefit Protection Act.

8.      The Parties have entered into this Agreement in order to avoid the substantial costs, risks, uncertainties and inconvenience of litigation. The Released Parties deny that they have acted wrongfully toward Ch-Hab, and the execution of this Agreement does not constitute an admission by any of the Released Parties that they have violated any law, statute, rule, regulation or ordinance of the United

Yc _____ Youssef Ch-Hab initials

States, the State of Florida, any other state, or any county or municipality, or that they have breached any of their policies or practices, or that Ch-Hab's claims are meritorious.

9.     Ch-Hab represents that he has had the advice of counsel of his choice and that after having had such advice he agrees and acknowledges that the Payment and this Agreement together constitute a fair and reasonable compromise of his alleged claims against CSI under the Fair Labor Standards Act.

10.    Ch-Hab warrants that he has not assigned, sold, subrogated, transferred, conveyed or pledged as security to anyone any actions, causes of action, claims or demands that he now has or ever had against the Released Parties, and he agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all actions, causes of action, claims or demands that may be brought against them, by anyone to whom Ch-Hab has assigned, sold, subrogated, transferred, conveyed or pledged as security any such actions, causes of action, claims or demands, whether such are asserted by third-party complaint, cross-claim or otherwise, or whether such are asserted for indemnity, contribution or otherwise.

11.    If, at any time after the execution of this Agreement, it is established that Ch-Hab has violated its terms, the Released Parties shall have the right to seek appropriate relief, including, but not limited to, an injunction restraining further violations.

12.    Ch-Hab agrees, confirms and warrants that: (a) the only consideration for his execution of this Agreement is that which is stated herein, and there are no other promises or agreements of any kind which have caused him to execute this Agreement; (b) he has not relied on statements or representations by the Released Parties, their agents or representatives, concerning the matters addressed in this Agreement; (c) he has carefully read and fully understands the provisions, meaning and intent of this Agreement, including but not limited to its release and waiver of claims and its final and binding effect; (d) the terms of this Agreement are contractual and not mere recitals; (e) he has been given a reasonable period of time within which to consider this Agreement; (f) he has had the benefit of

consulting with an attorney of his choice before executing this Agreement; and (g) he knowingly and voluntarily enters into this Agreement. Notwithstanding anything to the contrary in this Agreement, Ch-Hab is not waiving rights or claims that may arise after execution of this Agreement.

13.    Ch-Hab and his counsel shall complete and sign an Internal Revenue Service W-9 form, and Ch-Hab shall deliver those forms to CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801. Ch-Hab agrees that CSI may calculate deductions from the payment described in subparagraph 1(a) based on the W-4 form currently on file with CSI.

14.    CSI shall deliver the Payment to Ch-Hab's attorney, Wenzel Fenton Cabassa, P.A., within ten (10) business days following (a) dismissal of the Lawsuit with prejudice and (b) receipt by CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801, of: (i) a copy of this Agreement with Ch-Hab's signature; and (ii) the W-9 forms described in Paragraph 13 of this Agreement. However, if the date for delivery falls on a Saturday, Sunday or legal holiday, then CSI shall be deemed to have complied with its obligation to deliver the Payment if it makes delivery on the next business day following the date upon which delivery would otherwise be due. For purposes of this Agreement, delivery is complete upon sending the Payment by U.S. Mail to Wenzel Fenton Cabassa, P.A. or upon receipt by Wenzel Fenton Cabassa, P.A.

15.    Ch-Hab agrees that any and all documents and evidence gathered or prepared by or on behalf of Ch-Hab in order to advance any claims he has or may have against any of the Released Parties, or to advance any claims described in Paragraph 2 of this Agreement, will be destroyed or retained in a secure place in the offices of Ch-Hab's attorney, and hereby agrees to make a good faith effort to ensure the destruction of any documents or evidence which Ch-Hab or anyone acting on his behalf previously disseminated to non-parties concerning such claims, including consultants, witnesses and investigators.

16.    Ch-Hab warrants that he is not a Medicare beneficiary as of the date of this Agreement, and that no conditional payments have been made to him by Medicare. Ch-Hab agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all damages, claims,

Yc      Youssef Ch-Hab initials

liens, attorneys' fees or other amounts that may be due or claimed to be due on account of any Medicare claims by him, or any Medicare payments or conditional payments to him or for his benefit.

17.    This Agreement may be executed in multiple counterparts, each of which shall be deemed to constitute an original.

18.    This Agreement and all terms thereof shall be construed and governed according to the laws of Florida.

19.    The waiver by any Party of a breach of any provision of this Agreement by any other Party shall not operate or be construed as a waiver of any subsequent breach of that or any other provision by said Party.

20.    The rights and obligations of Ch-Hab and the Released Parties under this Agreement shall inure to the benefit of and shall be binding upon their respective successors and assigns.

21.    Ch-Hab agrees, confirms and warrants that there exist no other agreements, oral or written, between Ch-Hab and any of the Released Parties and relating to any of the alleged claims covered by this Agreement, and agrees that this Agreement supersedes any and all prior or contemporaneous agreements, written or verbal, or any other understandings that exist or may have existed between Ch-Hab and any of the Released Parties with respect to the alleged claims covered by this Agreement.

22.    This Agreement may not be altered, amended, modified, or terminated except by an instrument in writing, executed by the Parties hereto or their authorized representatives.

23.    The Parties agree that if enforcement of any term of this Agreement would impose a limitation that is contrary to applicable law, then said term shall be construed to provide only as broad a limitation as the law allows (if any), and no broader limitation, and the remainder of this Agreement will continue to be valid and enforceable, unless such construction shall deprive either Party of the substantial benefit of its bargain. The Parties further agree that if any provision in this Agreement is invalid, illegal or unenforceable, and if application of the first sentence of this Paragraph does not render the provision lawful, valid and enforceable, then said provision will be severed herefrom, and the remainder of this

Yc
_____ Youssef Ch-Hab initials

Agreement will continue to be valid and enforceable unless severance of said provision deprives a Party of the substantial benefit of its bargain.  The Parties agree, however, that any determination by any federal, state or local authority regarding treatment of the Payment, terms or consideration of this Agreement under any laws regarding taxation shall not constitute an event depriving any Party of the substantial benefit of its bargain.

24.     THE UNDERSIGNED STATE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT AND KNOW AND UNDERSTAND ITS CONTENTS, AND THAT THEY EXECUTED THIS AGREEMENT AS THEIR FREE ACT AND DEED.

25.     **BY SIGNING BELOW, THE PARTIES SIGNIFY THEIR INTENT TO BE BOUND BY ALL TERMS OF THIS AGREEMENT.**

**Youssef Ch-Hab**

_____

**Signature**

Date: _____ 6/7/16

Yc   Youssef Ch-Hab initials

**Charley's Steakhouse – Cypress Street, Inc.**

By: _____

Its: _SEC IT TREAS_____

Date: _06/14/16_____

WSACTIVELLP:8372182.1

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "Agreement") is made by and between Charley's Steakhouse – Cypress Street, Inc. ("CSI") and Kilian Hiner ("Hiner") (collectively, the "Parties").

WHEREAS, Hiner filed a lawsuit in the United States District Court, Middle District of Florida, Tampa Division, styled "Keith Sherman, Michael Abraham, Sidney Jones and William Byrd, Plaintiffs, v. Charley's Steakhouse-Cypress Street, Inc. Talk of the Town Restaurants, Inc., Defendant." Case No. 8:15-CV-01824-RAL-AEP (the "Lawsuit");

WHEREAS, CSI has denied any and all liability for the alleged claims and causes of action in the Lawsuit; and

WHEREAS, the Parties desire to settle the Lawsuit and all other alleged claims arising from alleged non-payment or allegedly improper payment of wages in order to avoid the cost and distraction of litigation;

NOW, THEREFORE, in exchange for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, CSI and Hiner agree as follows:

## ADDITIONAL DEFINITIONS

A.      Released Parties -- When used in this Agreement, "Released Parties" means the following persons and entities, individually, collectively, and in any combination:

(1)     Talk of the Town Restaurants, Inc. and Charley's Steakhouse – Cypress Street, Inc., and all of their respective past, present and future divisions, parents, subsidiaries, and affiliated entities;

(2)     All of the predecessors, successors and assigns of the entities listed in subparagraph (A)(1);

(3)     All of the past, present and future employees, officers, directors, managers, supervisors, agents, shareholders, owners, servants, partners, independent contractors, accountants, insurers, benefits plans, third party administrators, attorneys and representatives of the entities and persons listed in subparagraphs (A)(1) and (A)(2); and

(4)     The heirs, assigns, trustees, successors, agents and representatives of the entities and persons listed in subparagraphs (A)(1), (A)(2) and (A)(3).


Kilian Hiner initials

B.      Parties -- When used in this Agreement, "Parties" means Hiner and CSI.

## COVENANTS

1.      CSI shall pay the total sum of Two Thousand, Six Hundred Forty-five Dollars and Fifty-two Cents ($2,645.52) to Hiner pursuant to this Agreement (the "Payment"). The Payment shall be made by issuance of three checks payable as follows: (a) one check in the amount of Ninety-seven Dollars and Seventy-six Cents ($97.76), as wages, less applicable deductions, made payable to "Kilian Hiner" and for which CSI shall issue a W-2 form; (b) one check in the amount of Forty-seven Dollars and Seventy-six Cents ($47.76), made payable to "Kilian Hiner" and for which CSI shall issue a 1099 Form; and (c) one check in the amount of Two Thousand, Five Hundred Dollars and no Cents ($2,500.00) for attorneys' fees and costs, made payable to Wenzel Fenton Cabassa, P.A., and for which CSI shall issue a 1099 Form. CSI shall be deemed to have complied with the terms of Paragraph 1 of this Agreement upon delivery of the Payment (within the time and in the manner established by Paragraph 14 of this Agreement) to Hiner's attorneys, Wenzel Fenton Cabassa, P.A. CSI agrees that attorneys' fees and costs were discussed separately from the amounts payable to Hiner.

2.      Hiner hereby fully, finally and forever releases and discharges the Released Parties from any and all claims, liabilities, charges, demands, actions, causes of action, and suits of any kind arising from alleged non-payment or allegedly improper payment of wages, including claims under the Fair Labor Standards Act (FLSA); the Florida Minimum Wage Act, the Florida Constitution and any related contract or unjust enrichment claims related to amount of time worked and payment of wages, including claims for any type of damages or relief whatsoever, including, but not limited to, all claims for legal relief, all claims for equitable relief, and all claims for: back pay; front pay; tips; bonuses; incentive pay; commissions; salary; overtime compensation; other wages; other compensation; other money damages; reinstatement; continuation of insurance coverage; benefits under any employee benefit plan; medical or income benefits or payments; relocation expenses; any other fringe benefits; injunctive relief; equitable relief; declaratory relief; statutory damages, liquidated damages; compensatory damages; exemplary

Kilian Hiner initials

damages: consequential damages; punitive damages; attorneys' fees; costs; expenses; expert witness fees; interest; penalties; and any and all other claims for relief or damages.

3.      Hiner agrees to the dismissal with prejudice all of his claims in the Lawsuit.  The parties agree to file a motion for court approval of their settlement and further to do anything else necessary to effect the dismissal with prejudice of those claims, with each Party to bear his or its own attorneys' fees and costs.  If, for any reason, Hiner's claims in the Lawsuit are not dismissed with prejudice, then CSI shall have the option of declaring this Agreement null and void, and upon such a declaration Hiner shall promptly return to CSI the full amount of the Payment and the Parties shall be restored to the *status quo ante*.

4.      Hiner further agrees that he will not appeal the dismissal of the Lawsuit, and that he will not file any additional claims, charges, administrative proceedings, lawsuits or other actions against CSI or any of the Released Parties based upon any events occurring prior to the execution of this Agreement.  Hiner affirms and represents that other than the Lawsuit, he has not filed or made any complaints, charges or claims of any nature whatsoever against any of the Released Parties, and that he has no knowledge of any complaint, charge or claim having been filed or brought on his behalf.  If Hiner learns of any such complaint, charge or claim, he shall promptly request withdrawal of the complaint, charge or claim, Notwithstanding anything to the contrary in this Agreement, this Agreement shall not limit any right Hiner may have to file a charge or participate in a proceeding with the EEOC or NLRB, *however*, Hiner waives and releases any right he may have to damages or other personal remedy or benefit in connection with any such charge or proceeding.

5.      Hiner shall pay any and all taxes that may be due as a result of the Payment.  Hiner understands that the Internal Revenue Service and other taxing authorities may determine that the full amount of the Payment constitutes wages.  Hiner agrees and affirms that he is not relying on any representation made by the Released Parties, by the Released Parties' attorneys, or by any person or entity related to the Released Parties, concerning whether or not the Payment is taxable as wages, as income, or

 Kilian Hiner initials

otherwise, or concerning the amount of taxes that he may be required to pay as a result of the Payment. Hiner agrees that he will not be entitled to any additional consideration under this Agreement as a result of any assessment of, or liability for, taxes as a result of the Payment. Additionally, Hiner agrees to indemnify and hold the Released Parties harmless from and against any liability for any amounts determined by any taxing authority to be owed by the Released Parties on account of the Payment, or on account of Hiner's failure to pay taxes he may owe as a result of the Payment. This indemnification shall also apply to any penalty, interest or other sums, including attorneys' fees and costs that the Released Parties shall incur or owe in connection with or as a result of any such taxes.

6.      Except as provided in Paragraph 1 of this Agreement, Hiner shall bear his own costs, expenses, and attorneys' fees, no matter how accrued or accruing, arising from or relating to the Lawsuit or other events giving rise to this Agreement. Hiner agrees to fully defend and indemnify and hold the Released Parties harmless from and against any liability occasioned by a failure of Hiner or his attorney to reach further satisfactory arrangement regarding distribution of the Payment provided under this Agreement.

7.      In the event that the Released Parties should be required to defend any lawsuit or administrative charge or complaint filed or maintained by or on behalf of Hiner in violation of this Agreement, Hiner shall be liable to the Released Parties for all expenses (including discovery and other court costs and attorneys' fees) incurred in defending the same, regardless of the outcome of the litigation. This Paragraph shall not apply to actions for breach of this Agreement by or on behalf of any Party except for a claim by the Released Parties of a breach of Paragraph Nos. 2, 3 or 4. However, this Paragraph shall not apply to the extent its application would violate the Older Workers' Benefit Protection Act.

8.      The Parties have entered into this Agreement in order to avoid the substantial costs, risks, uncertainties and inconvenience of litigation. The Released Parties deny that they have acted wrongfully toward Hiner, and the execution of this Agreement does not constitute an admission by any of the Released Parties that they have violated any law, statute, rule, regulation or ordinance of the United


Kilian Hiner initials

States, the State of Florida, any other state, or any county or municipality, or that they have breached any of their policies or practices, or that Hiner's claims are meritorious.

9.      Hiner represents that he has had the advice of counsel of his choice and that after having had such advice he agrees and acknowledges that the Payment and this Agreement together constitute a fair and reasonable compromise of his alleged claims against CSI under the Fair Labor Standards Act.

10.     Hiner warrants that he has not assigned, sold, subrogated, transferred, conveyed or pledged as security to anyone any actions, causes of action, claims or demands that he now has or ever had against the Released Parties, and he agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all actions, causes of action, claims or demands that may be brought against them, by anyone to whom Hiner has assigned, sold, subrogated, transferred, conveyed or pledged as security any such actions, causes of action, claims or demands, whether such are asserted by third-party complaint, cross-claim or otherwise, or whether such are asserted for indemnity, contribution or otherwise.

11.     If, at any time after the execution of this Agreement, it is established that Hiner has violated its terms, the Released Parties shall have the right to seek appropriate relief, including, but not limited to, an injunction restraining further violations.

12.     Hiner agrees, confirms and warrants that:  (a) the only consideration for his execution of this Agreement is that which is stated herein, and there are no other promises or agreements of any kind which have caused him to execute this Agreement; (b) he has not relied on statements or representations by the Released Parties, their agents or representatives, concerning the matters addressed in this Agreement; (c) he has carefully read and fully understands the provisions, meaning and intent of this Agreement, including but not limited to its release and waiver of claims and its final and binding effect; (d) the terms of this Agreement are contractual and not mere recitals; (e) he has been given a reasonable period of time within which to consider this Agreement; (f) he has had the benefit of consulting with an attorney of his choice before executing this Agreement; and (g) he knowingly and voluntarily enters into


Kilian Hiner initials

this Agreement. Notwithstanding anything to the contrary in this Agreement, Hiner is not waiving rights or claims that may arise after execution of this Agreement.

13.     Hiner and his counsel shall complete and sign an Internal Revenue Service W-9 form, and Hiner shall deliver those forms to CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801. Hiner agrees that CSI may calculate deductions from the payment described in subparagraph 1(a) based on the W-4 form currently on file with CSI.

14.     CSI shall deliver the Payment to Hiner's attorney, Wenzel Fenton Cabassa, P.A., within ten (10) business days following (a) dismissal of the Lawsuit with prejudice and (b) receipt by CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801, of: (i) a copy of this Agreement with Hiner's signature; and (ii) the W-9 forms described in Paragraph 13 of this Agreement. However, if the date for delivery falls on a Saturday, Sunday or legal holiday, then CSI shall be deemed to have complied with its obligation to deliver the Payment if it makes delivery on the next business day following the date upon which delivery would otherwise be due. For purposes of this Agreement, delivery is complete upon sending the Payment by U.S. Mail to Wenzel Fenton Cabassa, P.A. or upon receipt by Wenzel Fenton Cabassa, P.A.

15.     Hiner agrees that any and all documents and evidence gathered or prepared by or on behalf of Hiner in order to advance any claims he has or may have against any of the Released Parties, or to advance any claims described in Paragraph 2 of this Agreement, will be destroyed or retained in a secure place in the offices of Hiner's attorney, and hereby agrees to make a good faith effort to ensure the destruction of any documents or evidence which Hiner or anyone acting on his behalf previously disseminated to non-parties concerning such claims, including consultants, witnesses and investigators.

16.     Hiner warrants that he is not a Medicare beneficiary as of the date of this Agreement, and that no conditional payments have been made to him by Medicare. Hiner agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all damages, claims, liens,

attorneys' fees or other amounts that may be due or claimed to be due on account of any Medicare claims by him, or any Medicare payments or conditional payments to him or for his benefit.

17.    This Agreement may be executed in multiple counterparts, each of which shall be deemed to constitute an original.

18.    This Agreement and all terms thereof shall be construed and governed according to the laws of Florida.

19.    The waiver by any Party of a breach of any provision of this Agreement by any other Party shall not operate or be construed as a waiver of any subsequent breach of that or any other provision by said Party.

20.    The rights and obligations of Hiner and the Released Parties under this Agreement shall inure to the benefit of and shall be binding upon their respective successors and assigns.

21.    Hiner agrees, confirms and warrants that there exist no other agreements, oral or written, between Hiner and any of the Released Parties and relating to any of the alleged claims covered by this Agreement, and agrees that this Agreement supersedes any and all prior or contemporaneous agreements, written or verbal, or any other understandings that exist or may have existed between Hiner and any of the Released Parties with respect to the alleged claims covered by this Agreement.

22.    This Agreement may not be altered, amended, modified, or terminated except by an instrument in writing, executed by the Parties hereto or their authorized representatives.

23.    The Parties agree that if enforcement of any term of this Agreement would impose a limitation that is contrary to applicable law, then said term shall be construed to provide only as broad a limitation as the law allows (if any), and no broader limitation, and the remainder of this Agreement will continue to be valid and enforceable, unless such construction shall deprive either Party of the substantial benefit of its bargain. The Parties further agree that if any provision in this Agreement is invalid, illegal or unenforceable, and if application of the first sentence of this Paragraph does not render the provision lawful, valid and enforceable, then said provision will be severed herefrom, and the remainder of this


Kilian Hiner initials

Agreement will continue to be valid and enforceable unless severance of said provision deprives a Party of the substantial benefit of its bargain.  The Parties agree, however, that any determination by any federal, state or local authority regarding treatment of the Payment, terms or consideration of this Agreement under any laws regarding taxation shall not constitute an event depriving any Party of the substantial benefit of its bargain.

24.     THE UNDERSIGNED STATE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT AND KNOW AND UNDERSTAND ITS CONTENTS, AND THAT THEY EXECUTED THIS AGREEMENT AS THEIR FREE ACT AND DEED.

25.     **BY SIGNING BELOW, THE PARTIES SIGNIFY THEIR INTENT TO BE BOUND BY ALL TERMS OF THIS AGREEMENT.**

 Kilian Hiner initials

**Kilian Hiner**

Signature

Date: 05/09/16

**Charley's Steakhouse – Cypress Street, Inc.**

By: _____

Its: _Sca Mans_____

Date: _06/14/16_____

WSACTIVELLP:8372280.1

_____ Kilian Hiner initials

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "Agreement") is made by and between Charley's Steakhouse – Cypress Street, Inc. ("CSI") and David Jackson ("Jackson") (collectively, the "Parties").

WHEREAS, Jackson filed a lawsuit in the United States District Court, Middle District of Florida, Tampa Division, styled "Keith Sherman, Michael Abraham, Sidney Jones and William Byrd, Plaintiffs, v. Charley's Steakhouse-Cypress Street, Inc. Talk of the Town Restaurants, Inc., Defendant," Case No. 8:15-CV-01824-RAL-AEP (the "Lawsuit");

WHEREAS, CSI has denied any and all liability for the alleged claims and causes of action in the Lawsuit; and

WHEREAS, the Parties desire to settle the Lawsuit and all other alleged claims arising from alleged non-payment or allegedly improper payment of wages in order to avoid the cost and distraction of litigation;

NOW, THEREFORE, in exchange for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, CSI and Jackson agree as follows:

## ADDITIONAL DEFINITIONS

A.    Released Parties -- When used in this Agreement, "Released Parties" means the following persons and entities, individually, collectively, and in any combination:

    (1)    Talk of the Town Restaurants, Inc. and Charley's Steakhouse – Cypress Street, Inc., and all of their respective past, present and future divisions, parents, subsidiaries, and affiliated entities;

    (2)    All of the predecessors, successors and assigns of the entities listed in subparagraph (A)(1);

    (3)    All of the past, present and future employees, officers, directors, managers, supervisors, agents, shareholders, owners, servants, partners, independent contractors, accountants, insurers, benefits plans, third party administrators, attorneys and representatives of the entities and persons listed in subparagraphs (A)(1) and (A)(2); and

    (4)    The heirs, assigns, trustees, successors, agents and representatives of the entities and persons listed in subparagraphs (A)(1), (A)(2) and (A)(3).

 David Jackson initials

B.      Parties -- When used in this Agreement, "Parties" means Jackson and CSI.

## COVENANTS

1.      CSI shall pay the total sum of Three Thousand, Thirty-one Dollars and Fifty-six Cents ($3,031.56) to Jackson pursuant to this Agreement (the "Payment"). The Payment shall be made by issuance of three checks payable as follows: (a) one check in the amount of Two Hundred Ninety-three Dollars and Twenty-eight Cents ($293.28), as wages, less applicable deductions, made payable to "David Jackson" and for which CSI shall issue a W-2 form; (b) one check in the amount of Two Hundred Thirty-eight Dollars and Twenty-eight Cents ($238.28), made payable to "David Jackson" and for which CSI shall issue a 1099 Form; and (c) one check in the amount of Two Thousand, Five Hundred Dollars and no Cents ($2,500.00) for attorneys' fees and costs, made payable to Wenzel Fenton Cabassa, P.A., and for which CSI shall issue a 1099 Form. CSI shall be deemed to have complied with the terms of Paragraph 1 of this Agreement upon delivery of the Payment (within the time and in the manner established by Paragraph 14 of this Agreement) to Jackson's attorneys, Wenzel Fenton Cabassa, P.A. CSI agrees that attorneys' fees and costs were discussed separately from the amounts payable to Jackson.

2.      Jackson hereby fully, finally and forever releases and discharges the Released Parties from any and all claims, liabilities, charges, demands, actions, causes of action, and suits of any kind arising from alleged non-payment or allegedly improper payment of wages, including claims under the Fair Labor Standards Act (FLSA); the Florida Minimum Wage Act, the Florida Constitution and any related contract or unjust enrichment claims related to amount of time worked and payment of wages, including claims for any type of damages or relief whatsoever, including, but not limited to, all claims for legal relief, all claims for equitable relief, and all claims for: back pay; front pay; tips; bonuses; incentive pay; commissions; salary; overtime compensation; other wages; other compensation; other money damages; reinstatement; continuation of insurance coverage; benefits under any employee benefit plan; medical or income benefits or payments; relocation expenses; any other fringe benefits; injunctive relief; equitable relief; declaratory relief; statutory damages, liquidated damages; compensatory damages;

 David Jackson initials

exemplary damages; consequential damages; punitive damages; attorneys' fees; costs; expenses; expert witness fees; interest; penalties; and any and all other claims for relief or damages.

3.     Jackson agrees to the dismissal with prejudice all of his claims in the Lawsuit.  The parties agree to file a motion for court approval of their settlement and further to do anything else necessary to effect the dismissal with prejudice of those claims, with each Party to bear his or its own attorneys' fees and costs.  If, for any reason, Jackson's claims in the Lawsuit are not dismissed with prejudice, then CSI shall have the option of declaring this Agreement null and void, and upon such a declaration Jackson shall promptly return to CSI the full amount of the Payment and the Parties shall be restored to the *status quo ante*.

4.     Jackson further agrees that he will not appeal the dismissal of the Lawsuit, and that he will not file any additional claims, charges, administrative proceedings, lawsuits or other actions against CSI or any of the Released Parties based upon any events occurring prior to the execution of this Agreement.  Jackson affirms and represents that other than the Lawsuit, he has not filed or made any complaints, charges or claims of any nature whatsoever against any of the Released Parties, and that he has no knowledge of any complaint, charge or claim having been filed or brought on his behalf.  If Jackson learns of any such complaint, charge or claim, he shall promptly request withdrawal of the complaint, charge or claim.  Notwithstanding anything to the contrary in this Agreement, this Agreement shall not limit any right Jackson may have to file a charge or participate in a proceeding with the EEOC or NLRB, *however*, Jackson waives and releases any right he may have to damages or other personal remedy or benefit in connection with any such charge or proceeding.

5.     Jackson shall pay any and all taxes that may be due as a result of the Payment.  Jackson understands that the Internal Revenue Service and other taxing authorities may determine that the full amount of the Payment constitutes wages.  Jackson agrees and affirms that he is not relying on any representation made by the Released Parties, by the Released Parties' attorneys, or by any person or entity related to the Released Parties, concerning whether or not the Payment is taxable as wages, as income, or

 David Jackson initials

otherwise, or concerning the amount of taxes that he may be required to pay as a result of the Payment. Jackson agrees that he will not be entitled to any additional consideration under this Agreement as a result of any assessment of, or liability for, taxes as a result of the Payment. Additionally, Jackson agrees to indemnify and hold the Released Parties harmless from and against any liability for any amounts determined by any taxing authority to be owed by the Released Parties on account of the Payment, or on account of Jackson's failure to pay taxes he may owe as a result of the Payment. This indemnification shall also apply to any penalty, interest or other sums, including attorneys' fees and costs that the Released Parties shall incur or owe in connection with or as a result of any such taxes.

6.     Except as provided in Paragraph 1 of this Agreement, Jackson shall bear his own costs, expenses, and attorneys' fees, no matter how accrued or accruing, arising from or relating to the Lawsuit or other events giving rise to this Agreement. Jackson agrees to fully defend and indemnify and hold the Released Parties harmless from and against any liability occasioned by a failure of Jackson or his attorney to reach further satisfactory arrangement regarding distribution of the Payment provided under this Agreement.

7.     In the event that the Released Parties should be required to defend any lawsuit or administrative charge or complaint filed or maintained by or on behalf of Jackson in violation of this Agreement, Jackson shall be liable to the Released Parties for all expenses (including discovery and other court costs and attorneys' fees) incurred in defending the same, regardless of the outcome of the litigation. This Paragraph shall not apply to actions for breach of this Agreement by or on behalf of any Party except for a claim by the Released Parties of a breach of Paragraph Nos. 2, 3 or 4. However, this Paragraph shall not apply to the extent its application would violate the Older Workers' Benefit Protection Act.

8.     The Parties have entered into this Agreement in order to avoid the substantial costs, risks, uncertainties and inconvenience of litigation. The Released Parties deny that they have acted wrongfully toward Jackson, and the execution of this Agreement does not constitute an admission by any of the Released Parties that they have violated any law, statute, rule, regulation or ordinance of the United

 David Jackson initials

Page 4 of 10

States, the State of Florida, any other state, or any county or municipality, or that they have breached any of their policies or practices, or that Jackson's claims are meritorious.

9.      Jackson represents that he has had the advice of counsel of his choice and that after having had such advice he agrees and acknowledges that the Payment and this Agreement together constitute a fair and reasonable compromise of his alleged claims against CSI under the Fair Labor Standards Act.

10.      Jackson warrants that he has not assigned, sold, subrogated, transferred, conveyed or pledged as security to anyone any actions, causes of action, claims or demands that he now has or ever had against the Released Parties, and he agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all actions, causes of action, claims or demands that may be brought against them, by anyone to whom Jackson has assigned, sold, subrogated, transferred, conveyed or pledged as security any such actions, causes of action, claims or demands, whether such are asserted by third-party complaint, cross-claim or otherwise, or whether such are asserted for indemnity, contribution or otherwise.

11.      If, at any time after the execution of this Agreement, it is established that Jackson has violated its terms, the Released Parties shall have the right to seek appropriate relief, including, but not limited to, an injunction restraining further violations.

12.      Jackson agrees, confirms and warrants that: (a) the only consideration for his execution of this Agreement is that which is stated herein, and there are no other promises or agreements of any kind which have caused him to execute this Agreement; (b) he has not relied on statements or representations by the Released Parties, their agents or representatives, concerning the matters addressed in this Agreement; (c) he has carefully read and fully understands the provisions, meaning and intent of this Agreement, including but not limited to its release and waiver of claims and its final and binding effect; (d) the terms of this Agreement are contractual and not mere recitals; (e) he has been given a reasonable period of time within which to consider this Agreement; (f) he has had the benefit of


David Jackson initials

Page 5 of 10

consulting with an attorney of his choice before executing this Agreement; and (g) he knowingly and voluntarily enters into this Agreement.  Notwithstanding anything to the contrary in this Agreement, Jackson is not waiving rights or claims that may arise after execution of this Agreement.

13.    Jackson and his counsel shall complete and sign an Internal Revenue Service W-9 form, and Jackson shall deliver those forms to CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801.  Jackson agrees that CSI may calculate deductions from the payment described in subparagraph 1(a) based on the W-4 form currently on file with CSI.

14.    CSI shall deliver the Payment to Jackson's attorney, Wenzel Fenton Cabassa, P.A., within ten (10) business days following (a) dismissal of the Lawsuit with prejudice and (b) receipt by CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801, of: (i) a copy of this Agreement with Jackson's signature; and (ii) the W-9 forms described in Paragraph 13 of this Agreement.  However, if the date for delivery falls on a Saturday, Sunday or legal holiday, then CSI shall be deemed to have complied with its obligation to deliver the Payment if it makes delivery on the next business day following the date upon which delivery would otherwise be due.  For purposes of this Agreement, delivery is complete upon sending the Payment by U.S. Mail to Wenzel Fenton Cabassa, P.A. or upon receipt by Wenzel Fenton Cabassa, P.A.

15.    Jackson agrees that any and all documents and evidence gathered or prepared by or on behalf of Jackson in order to advance any claims he has or may have against any of the Released Parties, or to advance any claims described in Paragraph 2 of this Agreement, will be destroyed or retained in a secure place in the offices of Jackson's attorney, and hereby agrees to make a good faith effort to ensure the destruction of any documents or evidence which Jackson or anyone acting on his behalf previously disseminated to non-parties concerning such claims, including consultants, witnesses and investigators.

16.    Jackson warrants that he is not a Medicare beneficiary as of the date of this Agreement, and that no conditional payments have been made to him by Medicare.  Jackson agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all damages, claims,

David Jackson initials

liens, attorneys' fees or other amounts that may be due or claimed to be due on account of any Medicare claims by him, or any Medicare payments or conditional payments to him or for his benefit.

17.      This Agreement may be executed in multiple counterparts, each of which shall be deemed to constitute an original.

18.      This Agreement and all terms thereof shall be construed and governed according to the laws of Florida.

19.      The waiver by any Party of a breach of any provision of this Agreement by any other Party shall not operate or be construed as a waiver of any subsequent breach of that or any other provision by said Party.

20.      The rights and obligations of Jackson and the Released Parties under this Agreement shall inure to the benefit of and shall be binding upon their respective successors and assigns.

21.      Jackson agrees, confirms and warrants that there exist no other agreements, oral or written, between Jackson and any of the Released Parties and relating to any of the alleged claims covered by this Agreement, and agrees that this Agreement supersedes any and all prior or contemporaneous agreements, written or verbal, or any other understandings that exist or may have existed between Jackson and any of the Released Parties with respect to the alleged claims covered by this Agreement.

22.      This Agreement may not be altered, amended, modified, or terminated except by an instrument in writing, executed by the Parties hereto or their authorized representatives.

23.      The Parties agree that if enforcement of any term of this Agreement would impose a limitation that is contrary to applicable law, then said term shall be construed to provide only as broad a limitation as the law allows (if any), and no broader limitation, and the remainder of this Agreement will continue to be valid and enforceable, unless such construction shall deprive either Party of the substantial benefit of its bargain. The Parties further agree that if any provision in this Agreement is invalid, illegal or unenforceable, and if application of the first sentence of this Paragraph does not render the provision lawful, valid and enforceable, then said provision will be severed herefrom, and the remainder of this

 David Jackson Initials

Agreement will continue to be valid and enforceable unless severance of said provision deprives a Party of the substantial benefit of its bargain. The Parties agree, however, that any determination by any federal, state or local authority regarding treatment of the Payment, terms or consideration of this Agreement under any laws regarding taxation shall not constitute an event depriving any Party of the substantial benefit of its bargain.

24.     THE UNDERSIGNED STATE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT AND KNOW AND UNDERSTAND ITS CONTENTS, AND THAT THEY EXECUTED THIS AGREEMENT AS THEIR FREE ACT AND DEED.

25.     BY SIGNING BELOW, THE PARTIES SIGNIFY THEIR INTENT TO BE BOUND BY ALL TERMS OF THIS AGREEMENT.


David Jackson initials

David Jackson

Signature

Date: 6/14/16

**Charley's Steakhouse – Cypress Street, Inc,**

By

Its:  SEC | TREAS

Date:  06/14/16

WSACTIVELLP:8372401.1

David Jackson initials

Page 10 of 10

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "Agreement") is made by and between Charley's Steakhouse – Cypress Street, Inc. ("CSI") and Sidney Jones ("Jones") (collectively, the "Parties").

WHEREAS, Jones filed a lawsuit in the United States District Court, Middle District of Florida, Tampa Division, styled "Keith Sherman, Michael Abraham, Sidney Jones and William Byrd, Plaintiffs, v. Charley's Steakhouse-Cypress Street, Inc. Talk of the Town Restaurants, Inc., Defendant," Case No. 8:15-CV-01824-RAL-AEP (the "Lawsuit");

WHEREAS, CSI has denied any and all liability for the alleged claims and causes of action in the Lawsuit; and

WHEREAS, the Parties desire to settle the Lawsuit and all other alleged claims arising from alleged non-payment or allegedly improper payment of wages in order to avoid the cost and distraction of litigation;

NOW, THEREFORE, in exchange for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, CSI and Jones agree as follows:

## ADDITIONAL DEFINITIONS

A.    Released Parties -- When used in this Agreement, "Released Parties" means the following persons and entities, individually, collectively, and in any combination:

(1)    Talk of the Town Restaurants, Inc. and Charley's Steakhouse – Cypress Street, Inc., and all of their respective past, present and future divisions, parents, subsidiaries, and affiliated entities;

(2)    All of the predecessors, successors and assigns of the entities listed in subparagraph (A)(1);

(3)    All of the past, present and future employees, officers, directors, managers, supervisors, agents, shareholders, owners, servants, partners, independent contractors, accountants, insurers, benefits plans, third party administrators, attorneys and representatives of the entities and persons listed in subparagraphs (A)(1) and (A)(2); and

(4)    The heirs, assigns, trustees, successors, agents and representatives of the entities and persons listed in subparagraphs (A)(1), (A)(2) and (A)(3).

$S\!J$  Sidney Jones initials

B.     Parties -- When used in this Agreement, "Parties" means Jones and CSI.

## COVENANTS

1.     CSI shall pay the total sum of Four Thousand, Three Hundred Fifty-six Dollars and Eleven Cents ($4,356.11) to Jones pursuant to this Agreement (the "Payment"). The Payment shall be made by issuance of three checks payable as follows: (a) one check in the amount of One Thousand, Twenty-three Dollars and Six Cents ($1,023.06), as wages, less applicable deductions, made payable to "Sidney Jones" and for which CSI shall issue a W-2 form; (b) one check in the amount of Eight Hundred Thirty-three Dollars and Five Cents ($833.05), made payable to "Sidney Jones" and for which CSI shall issue a 1099 Form; and (c) one check in the amount of Two Thousand, Five Hundred Dollars and no Cents ($2,500.00) for attorneys' fees and costs, made payable to Wenzel Fenton Cabassa, P.A., and for which CSI shall issue a 1099 Form. CSI shall be deemed to have complied with the terms of Paragraph 1 of this Agreement upon delivery of the Payment (within the time and in the manner established by Paragraph 14 of this Agreement) to Jones's attorneys, Wenzel Fenton Cabassa, P.A. CSI agrees that attorneys' fees and costs were discussed separately from the amounts payable to Jones.

2.     Jones hereby fully, finally and forever releases and discharges the Released Parties from any and all claims, liabilities, charges, demands, actions, causes of action, and suits of any kind arising from alleged non-payment or allegedly improper payment of wages, including claims under the Fair Labor Standards Act (FLSA); the Florida Minimum Wage Act, the Florida Constitution and any related contract or unjust enrichment claims related to amount of time worked and payment of wages, including claims for any type of damages or relief whatsoever, including, but not limited to, all claims for legal relief, all claims for equitable relief, and all claims for: back pay; front pay; tips; bonuses; incentive pay; commissions; salary; overtime compensation; other wages; other compensation; other money damages; reinstatement; continuation of insurance coverage; benefits under any employee benefit plan; medical or income benefits or payments; relocation expenses; any other fringe benefits; injunctive relief; equitable relief; declaratory relief; statutory damages, liquidated damages; compensatory damages; exemplary

SJ  Sidney Jones initials

damages; consequential damages; punitive damages; attorneys' fees; costs; expenses; expert witness fees; interest; penalties; and any and all other claims for relief or damages.

3.     Jones agrees to the dismissal with prejudice all of his claims in the Lawsuit. The parties agree to file a motion for court approval of their settlement and further to do anything else necessary to effect the dismissal with prejudice of those claims, with each Party to bear his or its own attorneys' fees and costs. If, for any reason, Jones's claims in the Lawsuit are not dismissed with prejudice, then CSI shall have the option of declaring this Agreement null and void, and upon such a declaration Jones shall promptly return to CSI the full amount of the Payment and the Parties shall be restored to the *status quo ante*.

4.     Jones further agrees that he will not appeal the dismissal of the Lawsuit, and that he will not file any additional claims, charges, administrative proceedings, lawsuits or other actions against CSI or any of the Released Parties based upon any events occurring prior to the execution of this Agreement. Jones affirms and represents that other than the Lawsuit, he has not filed or made any complaints, charges or claims of any nature whatsoever against any of the Released Parties, and that he has no knowledge of any complaint, charge or claim having been filed or brought on his behalf. If Jones learns of any such complaint, charge or claim, he shall promptly request withdrawal of the complaint, charge or claim. Notwithstanding anything to the contrary in this Agreement, this Agreement shall not limit any right Jones may have to file a charge or participate in a proceeding with the EEOC or NLRB, *however*, Jones waives and releases any right he may have to damages or other personal remedy or benefit in connection with any such charge or proceeding.

5.     Jones shall pay any and all taxes that may be due as a result of the Payment. Jones understands that the Internal Revenue Service and other taxing authorities may determine that the full amount of the Payment constitutes wages. Jones agrees and affirms that he is not relying on any representation made by the Released Parties, by the Released Parties' attorneys, or by any person or entity related to the Released Parties, concerning whether or not the Payment is taxable as wages, as income, or

*SJ*  Sidney Jones initials

otherwise, or concerning the amount of taxes that he may be required to pay as a result of the Payment. Jones agrees that he will not be entitled to any additional consideration under this Agreement as a result of any assessment of, or liability for, taxes as a result of the Payment. Additionally, Jones agrees to indemnify and hold the Released Parties harmless from and against any liability for any amounts determined by any taxing authority to be owed by the Released Parties on account of the Payment, or on account of Jones's failure to pay taxes he may owe as a result of the Payment. This indemnification shall also apply to any penalty, interest or other sums, including attorneys' fees and costs that the Released Parties shall incur or owe in connection with or as a result of any such taxes.

6.     Except as provided in Paragraph 1 of this Agreement, Jones shall bear his own costs, expenses, and attorneys' fees, no matter how accrued or accruing, arising from or relating to the Lawsuit or other events giving rise to this Agreement. Jones agrees to fully defend and indemnify and hold the Released Parties harmless from and against any liability occasioned by a failure of Jones or his attorney to reach further satisfactory arrangement regarding distribution of the Payment provided under this Agreement.

7.     In the event that the Released Parties should be required to defend any lawsuit or administrative charge or complaint filed or maintained by or on behalf of Jones in violation of this Agreement, Jones shall be liable to the Released Parties for all expenses (including discovery and other court costs and attorneys' fees) incurred in defending the same, regardless of the outcome of the litigation. This Paragraph shall not apply to actions for breach of this Agreement by or on behalf of any Party except for a claim by the Released Parties of a breach of Paragraph Nos. 2, 3 or 4. However, this Paragraph shall not apply to the extent its application would violate the Older Workers' Benefit Protection Act.

8.     The Parties have entered into this Agreement in order to avoid the substantial costs, risks, uncertainties and inconvenience of litigation. The Released Parties deny that they have acted wrongfully toward Jones, and the execution of this Agreement does not constitute an admission by any of the Released Parties that they have violated any law, statute, rule, regulation or ordinance of the United

_____ Sidney Jones initials

States, the State of Florida, any other state, or any county or municipality, or that they have breached any of their policies or practices, or that Jones's claims are meritorious.

9.    Jones represents that he has had the advice of counsel of his choice and that after having had such advice he agrees and acknowledges that the Payment and this Agreement together constitute a fair and reasonable compromise of his alleged claims against CSI under the Fair Labor Standards Act.

10.    Jones warrants that he has not assigned, sold, subrogated, transferred, conveyed or pledged as security to anyone any actions, causes of action, claims or demands that he now has or ever had against the Released Parties, and he agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all actions, causes of action, claims or demands that may be brought against them, by anyone to whom Jones has assigned, sold, subrogated, transferred, conveyed or pledged as security any such actions, causes of action, claims or demands, whether such are asserted by third-party complaint, cross-claim or otherwise, or whether such are asserted for indemnity, contribution or otherwise.

11.    If, at any time after the execution of this Agreement, it is established that Jones has violated its terms, the Released Parties shall have the right to seek appropriate relief, including, but not limited to, an injunction restraining further violations.

12.    Jones agrees, confirms and warrants that:  (a) the only consideration for his execution of this Agreement is that which is stated herein, and there are no other promises or agreements of any kind which have caused him to execute this Agreement; (b) he has not relied on statements or representations by the Released Parties, their agents or representatives, concerning the matters addressed in this Agreement; (c) he has carefully read and fully understands the provisions, meaning and intent of this Agreement, including but not limited to its release and waiver of claims and its final and binding effect; (d) the terms of this Agreement are contractual and not mere recitals; (e) he has been given a reasonable period of time within which to consider this Agreement; (f) he has had the benefit of consulting with an attorney of his choice before executing this Agreement; and (g) he knowingly and voluntarily enters into

SJ    Sidney Jones initials

this Agreement. Notwithstanding anything to the contrary in this Agreement, Jones is not waiving rights or claims that may arise after execution of this Agreement.

13.     Jones and his counsel shall complete and sign an Internal Revenue Service W-9 form, and Jones shall deliver those forms to CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801. Jones agrees that CSI may calculate deductions from the payment described in subparagraph 1(a) based on the W-4 form currently on file with CSI.

14.     CSI shall deliver the Payment to Jones's attorney, Wenzel Fenton Cabassa, P.A., within ten (10) business days following (a) dismissal of the Lawsuit with prejudice and (b) receipt by CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801, of: (i) a copy of this Agreement with Jones's signature; and (ii) the W-9 forms described in Paragraph 13 of this Agreement. However, if the date for delivery falls on a Saturday, Sunday or legal holiday, then CSI shall be deemed to have complied with its obligation to deliver the Payment if it makes delivery on the next business day following the date upon which delivery would otherwise be due. For purposes of this Agreement, delivery is complete upon sending the Payment by U.S. Mail to Wenzel Fenton Cabassa, P.A. or upon receipt by Wenzel Fenton Cabassa, P.A.

15.     Jones agrees that any and all documents and evidence gathered or prepared by or on behalf of Jones in order to advance any claims he has or may have against any of the Released Parties, or to advance any claims described in Paragraph 2 of this Agreement, will be destroyed or retained in a secure place in the offices of Jones's attorney, and hereby agrees to make a good faith effort to ensure the destruction of any documents or evidence which Jones or anyone acting on his behalf previously disseminated to non-parties concerning such claims, including consultants, witnesses and investigators.

16.     Jones warrants that he is not a Medicare beneficiary as of the date of this Agreement, and that no conditional payments have been made to him by Medicare. Jones agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all damages, claims, liens,

SJ  Sidney Jones initials

attorneys' fees or other amounts that may be due or claimed to be due on account of any Medicare claims by him, or any Medicare payments or conditional payments to him or for his benefit.

17.   This Agreement may be executed in multiple counterparts, each of which shall be deemed to constitute an original.

18.   This Agreement and all terms thereof shall be construed and governed according to the laws of Florida.

19.   The waiver by any Party of a breach of any provision of this Agreement by any other Party shall not operate or be construed as a waiver of any subsequent breach of that or any other provision by said Party.

20.   The rights and obligations of Jones and the Released Parties under this Agreement shall inure to the benefit of and shall be binding upon their respective successors and assigns.

21.   Jones agrees, confirms and warrants that there exist no other agreements, oral or written, between Jones and any of the Released Parties and relating to any of the alleged claims covered by this Agreement, and agrees that this Agreement supersedes any and all prior or contemporaneous agreements, written or verbal, or any other understandings that exist or may have existed between Jones and any of the Released Parties with respect to the alleged claims covered by this Agreement.

22.   This Agreement may not be altered, amended, modified, or terminated except by an instrument in writing, executed by the Parties hereto or their authorized representatives.

23.   The Parties agree that if enforcement of any term of this Agreement would impose a limitation that is contrary to applicable law, then said term shall be construed to provide only as broad a limitation as the law allows (if any), and no broader limitation, and the remainder of this Agreement will continue to be valid and enforceable, unless such construction shall deprive either Party of the substantial benefit of its bargain. The Parties further agree that if any provision in this Agreement is invalid, illegal or unenforceable, and if application of the first sentence of this Paragraph does not render the provision lawful, valid and enforceable, then said provision will be severed herefrom, and the remainder of this

S J   Sidney Jones initials

Agreement will continue to be valid and enforceable unless severance of said provision deprives a Party of the substantial benefit of its bargain.   The Parties agree, however, that any determination by any federal, state or local authority regarding treatment of the Payment, terms or consideration of this Agreement under any laws regarding taxation shall not constitute an event depriving any Party of the substantial benefit of its bargain.

24.     THE UNDERSIGNED STATE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT AND KNOW AND UNDERSTAND ITS CONTENTS, AND THAT THEY EXECUTED THIS AGREEMENT AS THEIR FREE ACT AND DEED.

25.     BY SIGNING BELOW, THE PARTIES SIGNIFY THEIR INTENT TO BE BOUND BY ALL TERMS OF THIS AGREEMENT.

_____ Sidney Jones initials

Sidney Jones

**Signature**

Date: 5/24/16

Sidney Jones initials

**Charley's Steakhouse – Cypress Street, Inc.**

By: _____

Its: _SEC/TREAS_____

Date: _06/14/11_____

WSACTIVELLP:8372481.1

_SJ_ Sidney Jones initials

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "Agreement") is made by and between Charley's Steakhouse – Cypress Street, Inc. ("CSI") and Jose Mendez ("Mendez") (collectively, the "Parties").

WHEREAS, Mendez filed a lawsuit in the United States District Court, Middle District of Florida, Tampa Division, styled "Keith Sherman, Michael Abraham, Sidney Jones and William Byrd, Plaintiffs, v. Charley's Steakhouse-Cypress Street, Inc. Talk of the Town Restaurants, Inc., Defendant," Case No. 8:15-CV-01824-RAL-AEP (the "Lawsuit");

WHEREAS, CSI has denied any and all liability for the alleged claims and causes of action in the Lawsuit; and

WHEREAS, the Parties desire to settle the Lawsuit and all other alleged claims arising from alleged non-payment or allegedly improper payment of wages in order to avoid the cost and distraction of litigation;

NOW, THEREFORE, in exchange for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, CSI and Mendez agree as follows:

## ADDITIONAL DEFINITIONS

A.      Released Parties -- When used in this Agreement, "Released Parties" means the following persons and entities, individually, collectively, and in any combination:

      (1)      Talk of the Town Restaurants, Inc. and Charley's Steakhouse – Cypress Street, Inc., and all of their respective past, present and future divisions, parents, subsidiaries, and affiliated entities;

      (2)      All of the predecessors, successors and assigns of the entities listed in subparagraph (A)(1);

      (3)      All of the past, present and future employees, officers, directors, managers, supervisors, agents, shareholders, owners, servants, partners, independent contractors, accountants, insurers, benefits plans, third party administrators, attorneys and representatives of the entities and persons listed in subparagraphs (A)(1) and (A)(2); and

      (4)      The heirs, assigns, trustees, successors, agents and representatives of the entities and persons listed in subparagraphs (A)(1), (A)(2) and (A)(3).

JM
_____ Jose Mendez initials

B.      Parties -- When used in this Agreement, "Parties" means Mendez and CSI.

## COVENANTS

1.      CSI shall pay the total sum of Six Thousand, One Hundred Seventy-seven Dollars and Ninety-eight Cents ($6,177.98) to Mendez pursuant to this Agreement (the "Payment"). The Payment shall be made by issuance of three checks payable as follows:  (a) one check in the amount of Two Thousand, Twenty-six Dollars and Forty-nine Cents ($2,026.49), as wages, less applicable deductions, made payable to "Jose Mendez" and for which CSI shall issue a W-2 form; (b) one check in the amount of One Thousand, Six Hundred Fifty-one Dollars and Forty-nine Cents ($1,651.49), made payable to "Jose Mendez" and for which CSI shall issue a 1099 Form; and (c) one check in the amount of Two Thousand, Five Hundred Dollars and no Cents ($2,500.00) for attorneys' fees and costs, made payable to Wenzel Fenton Cabassa, P.A., and for which CSI shall issue a 1099 Form.  CSI shall be deemed to have complied with the terms of Paragraph 1 of this Agreement upon delivery of the Payment (within the time and in the manner established by Paragraph 14 of this Agreement) to Mendez's attorneys, Wenzel Fenton Cabassa, P.A.  CSI agrees that attorneys' fees and costs were discussed separately from the amounts payable to Mendez.

2.      Mendez hereby fully, finally and forever releases and discharges the Released Parties from any and all claims, liabilities, charges, demands, actions, causes of action, and suits of any kind arising from alleged non-payment or allegedly improper payment of wages, including claims under the Fair Labor Standards Act (FLSA); the Florida Minimum Wage Act, the Florida Constitution and any related contract or unjust enrichment claims related to amount of time worked and payment of wages, including claims for any type of damages or relief whatsoever, including, but not limited to, all claims for legal relief, all claims for equitable relief, and all claims for: back pay; front pay; tips; bonuses; incentive pay; commissions; salary; overtime compensation; other wages; other compensation; other money damages; reinstatement; continuation of insurance coverage; benefits under any employee benefit plan; medical or income benefits or payments; relocation expenses; any other fringe benefits; injunctive relief;

equitable relief; declaratory relief; statutory damages, liquidated damages; compensatory damages; exemplary damages; consequential damages; punitive damages; attorneys' fees; costs; expenses; expert witness fees; interest; penalties; and any and all other claims for relief or damages.

3.      Mendez agrees to the dismissal with prejudice all of his claims in the Lawsuit. The parties agree to file a motion for court approval of their settlement and further to do anything else necessary to effect the dismissal with prejudice of those claims, with each Party to bear his or its own attorneys' fees and costs. If, for any reason, Mendez's claims in the Lawsuit are not dismissed with prejudice, then CSI shall have the option of declaring this Agreement null and void, and upon such a declaration Mendez shall promptly return to CSI the full amount of the Payment and the Parties shall be restored to the *status quo ante*.

4.      Mendez further agrees that he will not appeal the dismissal of the Lawsuit, and that he will not file any additional claims, charges, administrative proceedings, lawsuits or other actions against CSI or any of the Released Parties based upon any events occurring prior to the execution of this Agreement. Mendez affirms and represents that other than the Lawsuit, he has not filed or made any complaints, charges or claims of any nature whatsoever against any of the Released Parties, and that he has no knowledge of any complaint, charge or claim having been filed or brought on his behalf. If Mendez learns of any such complaint, charge or claim, he shall promptly request withdrawal of the complaint, charge or claim. Notwithstanding anything to the contrary in this Agreement, this Agreement shall not limit any right Mendez may have to file a charge or participate in a proceeding with the EEOC or NLRB, *however*, Mendez waives and releases any right he may have to damages or other personal remedy or benefit in connection with any such charge or proceeding.

5.      Mendez shall pay any and all taxes that may be due as a result of the Payment. Mendez understands that the Internal Revenue Service and other taxing authorities may determine that the full amount of the Payment constitutes wages. Mendez agrees and affirms that he is not relying on any representation made by the Released Parties, by the Released Parties' attorneys, or by any person or entity

JM
_____ Jose Mendez initials                     Page 3 of 10

related to the Released Parties, concerning whether or not the Payment is taxable as wages, as income, or otherwise, or concerning the amount of taxes that he may be required to pay as a result of the Payment. Mendez agrees that he will not be entitled to any additional consideration under this Agreement as a result of any assessment of, or liability for, taxes as a result of the Payment.  Additionally, Mendez agrees to indemnify and hold the Released Parties harmless from and against any liability for any amounts determined by any taxing authority to be owed by the Released Parties on account of the Payment, or on account of Mendez's failure to pay taxes he may owe as a result of the Payment.  This indemnification shall also apply to any penalty, interest or other sums, including attorneys' fees and costs that the Released Parties shall incur or owe in connection with or as a result of any such taxes.

6.      Except as provided in Paragraph 1 of this Agreement, Mendez shall bear his own costs, expenses, and attorneys' fees, no matter how accrued or accruing, arising from or relating to the Lawsuit or other events giving rise to this Agreement.  Mendez agrees to fully defend and indemnify and hold the Released Parties harmless from and against any liability occasioned by a failure of Mendez or his attorney to reach further satisfactory arrangement regarding distribution of the Payment provided under this Agreement.

7.      In the event that the Released Parties should be required to defend any lawsuit or administrative charge or complaint filed or maintained by or on behalf of Mendez in violation of this Agreement, Mendez shall be liable to the Released Parties for all expenses (including discovery and other court costs and attorneys' fees) incurred in defending the same, regardless of the outcome of the litigation. This Paragraph shall not apply to actions for breach of this Agreement by or on behalf of any Party except for a claim by the Released Parties of a breach of Paragraph Nos. 2, 3 or 4.  However, this Paragraph shall not apply to the extent its application would violate the Older Workers' Benefit Protection Act.

8.      The Parties have entered into this Agreement in order to avoid the substantial costs, risks, uncertainties and inconvenience of litigation.  The Released Parties deny that they have acted wrongfully toward Mendez, and the execution of this Agreement does not constitute an admission by any of the

JM   Jose Mendez initials

Released Parties that they have violated any law, statute, rule, regulation or ordinance of the United States, the State of Florida, any other state, or any county or municipality, or that they have breached any of their policies or practices, or that Mendez's claims are meritorious.

9.     Mendez represents that he has had the advice of counsel of his choice and that after having had such advice he agrees and acknowledges that the Payment and this Agreement together constitute a fair and reasonable compromise of his alleged claims against CSI under the Fair Labor Standards Act.

10.     Mendez warrants that he has not assigned, sold, subrogated, transferred, conveyed or pledged as security to anyone any actions, causes of action, claims or demands that he now has or ever had against the Released Parties, and he agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all actions, causes of action, claims or demands that may be brought against them, by anyone to whom Mendez has assigned, sold, subrogated, transferred, conveyed or pledged as security any such actions, causes of action, claims or demands, whether such are asserted by third-party complaint, cross-claim or otherwise, or whether such are asserted for indemnity, contribution or otherwise.

11.     If, at any time after the execution of this Agreement, it is established that Mendez has violated its terms, the Released Parties shall have the right to seek appropriate relief, including, but not limited to, an injunction restraining further violations.

12.     Mendez agrees, confirms and warrants that:  (a) the only consideration for his execution of this Agreement is that which is stated herein, and there are no other promises or agreements of any kind which have caused him to execute this Agreement; (b) he has not relied on statements or representations by the Released Parties, their agents or representatives, concerning the matters addressed in this Agreement; (c) he has carefully read and fully understands the provisions, meaning and intent of this Agreement, including but not limited to its release and waiver of claims and its final and binding effect; (d) the terms of this Agreement are contractual and not mere recitals; (e) he has been given a

_JM_ Jose Mendez initials

reasonable period of time within which to consider this Agreement; (f) he has had the benefit of consulting with an attorney of his choice before executing this Agreement; and (g) he knowingly and voluntarily enters into this Agreement. Notwithstanding anything to the contrary in this Agreement, Mendez is not waiving rights or claims that may arise after execution of this Agreement.

13.     Mendez and his counsel shall complete and sign an Internal Revenue Service W-9 form, and Mendez shall deliver those forms to CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801. Mendez agrees that CSI may calculate deductions from the payment described in subparagraph 1(a) based on the W-4 form currently on file with CSI.

14.     CSI shall deliver the Payment to Mendez's attorney, Wenzel Fenton Cabassa, P.A., within ten (10) business days following (a) dismissal of the Lawsuit with prejudice and (b) receipt by CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801, of: (i) a copy of this Agreement with Mendez's signature; and (ii) the W-9 forms described in Paragraph 13 of this Agreement. However, if the date for delivery falls on a Saturday, Sunday or legal holiday, then CSI shall be deemed to have complied with its obligation to deliver the Payment if it makes delivery on the next business day following the date upon which delivery would otherwise be due. For purposes of this Agreement, delivery is complete upon sending the Payment by U.S. Mail to Wenzel Fenton Cabassa, P.A. or upon receipt by Wenzel Fenton Cabassa, P.A.

15.     Mendez agrees that any and all documents and evidence gathered or prepared by or on behalf of Mendez in order to advance any claims he has or may have against any of the Released Parties, or to advance any claims described in Paragraph 2 of this Agreement, will be destroyed or retained in a secure place in the offices of Mendez's attorney, and hereby agrees to make a good faith effort to ensure the destruction of any documents or evidence which Mendez or anyone acting on his behalf previously disseminated to non-parties concerning such claims, including consultants, witnesses and investigators.

16.     Mendez warrants that he is not a Medicare beneficiary as of the date of this Agreement, and that no conditional payments have been made to him by Medicare. Mendez agrees to fully defend

and indemnify and hold the Released Parties harmless from and against any and all damages, claims, liens, attorneys' fees or other amounts that may be due or claimed to be due on account of any Medicare claims by him, or any Medicare payments or conditional payments to him or for his benefit.

17.     This Agreement may be executed in multiple counterparts, each of which shall be deemed to constitute an original.

18.     This Agreement and all terms thereof shall be construed and governed according to the laws of Florida.

19.     The waiver by any Party of a breach of any provision of this Agreement by any other Party shall not operate or be construed as a waiver of any subsequent breach of that or any other provision by said Party.

20.     The rights and obligations of Mendez and the Released Parties under this Agreement shall inure to the benefit of and shall be binding upon their respective successors and assigns.

21.     Mendez agrees, confirms and warrants that there exist no other agreements, oral or written, between Mendez and any of the Released Parties and relating to any of the alleged claims covered by this Agreement, and agrees that this Agreement supersedes any and all prior or contemporaneous agreements, written or verbal, or any other understandings that exist or may have existed between Mendez and any of the Released Parties with respect to the alleged claims covered by this Agreement.

22.     This Agreement may not be altered, amended, modified, or terminated except by an instrument in writing, executed by the Parties hereto or their authorized representatives.

23.     The Parties agree that if enforcement of any term of this Agreement would impose a limitation that is contrary to applicable law, then said term shall be construed to provide only as broad a limitation as the law allows (if any), and no broader limitation, and the remainder of this Agreement will continue to be valid and enforceable, unless such construction shall deprive either Party of the substantial benefit of its bargain.  The Parties further agree that if any provision in this Agreement is invalid, illegal

Jose Mendez initials

or unenforceable, and if application of the first sentence of this Paragraph does not render the provision lawful, valid and enforceable, then said provision will be severed herefrom, and the remainder of this Agreement will continue to be valid and enforceable unless severance of said provision deprives a Party of the substantial benefit of its bargain. The Parties agree, however, that any determination by any federal, state or local authority regarding treatment of the Payment, terms or consideration of this Agreement under any laws regarding taxation shall not constitute an event depriving any Party of the substantial benefit of its bargain.

24.    THE UNDERSIGNED STATE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT AND KNOW AND UNDERSTAND ITS CONTENTS, AND THAT THEY EXECUTED THIS AGREEMENT AS THEIR FREE ACT AND DEED.

25.    **BY SIGNING BELOW, THE PARTIES SIGNIFY THEIR INTENT TO BE BOUND BY ALL TERMS OF THIS AGREEMENT.**

**Jose Mendez**

_____

**Signature**

**Date:** _____

_____ Jose Mendez initials

**Charley's Steakhouse – Cypress Street, Inc.**

By: _____

Its: ____SEC/TREAS_____

Date: ____06/14/16_____
WSACTIVELLP:8372547.1

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "Agreement") is made by and between Charley's Steakhouse – Cypress Street, Inc. ("CSI") and Jesse Reyerse ("Reyerse") (collectively, the "Parties").

WHEREAS, Reyerse filed a lawsuit in the United States District Court, Middle District of Florida, Tampa Division, styled "Keith Sherman, Michael Abraham, Sidney Jones and William Byrd, Plaintiffs, v. Charley's Steakhouse-Cypress Street, Inc. Talk of the Town Restaurants, Inc., Defendant," Case No. 8:15-CV-01824-RAL-AEP (the "Lawsuit");

WHEREAS, CSI has denied any and all liability for the alleged claims and causes of action in the Lawsuit; and

WHEREAS, the Parties desire to settle the Lawsuit and all other alleged claims arising from alleged non-payment or allegedly improper payment of wages in order to avoid the cost and distraction of litigation;

NOW, THEREFORE, in exchange for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, CSI and Reyerse agree as follows:

## ADDITIONAL DEFINITIONS

A.     Released Parties -- When used in this Agreement, "Released Parties" means the following persons and entities, individually, collectively, and in any combination:

      (1)     Talk of the Town Restaurants, Inc. and Charley's Steakhouse – Cypress Street, Inc., and all of their respective past, present and future divisions, parents, subsidiaries, and affiliated entities;

      (2)     All of the predecessors, successors and assigns of the entities listed in subparagraph (A)(1);

      (3)     All of the past, present and future employees, officers, directors, managers, supervisors, agents, shareholders, owners, servants, partners, independent contractors, accountants, insurers, benefits plans, third party administrators, attorneys and representatives of the entities and persons listed in subparagraphs (A)(1) and (A)(2); and

      (4)     The heirs, assigns, trustees, successors, agents and representatives of the entities and persons listed in subparagraphs (A)(1), (A)(2) and (A)(3).


Jesse Reyerse initials

B.     Parties -- When used in this Agreement, "Parties" means Reyerse and CSI.

## COVENANTS

1.     CSI shall pay the total sum of Three Thousand, Nine Hundred Sixty-three Dollars and Sixty-six Cents ($3,963.66) to Reyerse pursuant to this Agreement (the "Payment"). The Payment shall be made by issuance of three checks payable as follows:  (a) one check in the amount of Eight Hundred Six Dollars and Eighty-three Cents ($806.83), as wages, less applicable deductions, made payable to "Jesse Reyerse" and for which CSI shall issue a W-2 form; (b) one check in the amount of Six Hundred Fifty-six Dollars and Eighty-three Cents ($656.83), made payable to "Jesse Reyerse" and for which CSI shall issue a 1099 Form; and (c) one check in the amount of Two Thousand, Five Hundred Dollars and no Cents ($2,500.00) for attorneys' fees and costs, made payable to Wenzel Fenton Cabassa, P.A., and for which CSI shall issue a 1099 Form. CSI shall be deemed to have complied with the terms of Paragraph 1 of this Agreement upon delivery of the Payment (within the time and in the manner established by Paragraph 14 of this Agreement) to Reyerse's attorneys, Wenzel Fenton Cabassa, P.A. CSI agrees that attorneys' fees and costs were discussed separately from the amounts payable to Reyerse.

2.     Reyerse hereby fully, finally and forever releases and discharges the Released Parties from any and all claims, liabilities, charges, demands, actions, causes of action, and suits of any kind arising from alleged non-payment or allegedly improper payment of wages, including claims under the Fair Labor Standards Act (FLSA); the Florida Minimum Wage Act, the Florida Constitution and any related contract or unjust enrichment claims related to amount of time worked and payment of wages, including claims for any type of damages or relief whatsoever, including, but not limited to, all claims for legal relief, all claims for equitable relief, and all claims for: back pay; front pay; tips; bonuses; incentive pay; commissions; salary; overtime compensation; other wages; other compensation; other money damages; reinstatement; continuation of insurance coverage; benefits under any employee benefit plan; medical or income benefits or payments; relocation expenses; any other fringe benefits; injunctive relief; equitable relief; declaratory relief; statutory damages, liquidated damages; compensatory damages;

exemplary damages; consequential damages; punitive damages; attorneys' fees; costs; expenses; expert witness fees; interest; penalties; and any and all other claims for relief or damages.

      3.      Reyerse agrees to the dismissal with prejudice all of his claims in the Lawsuit. The parties agree to file a motion for court approval of their settlement and further to do anything else necessary to effect the dismissal with prejudice of those claims, with each Party to bear his or its own attorneys' fees and costs. If, for any reason, Reyerse's claims in the Lawsuit are not dismissed with prejudice, then CSI shall have the option of declaring this Agreement null and void, and upon such a declaration Reyerse shall promptly return to CSI the full amount of the Payment and the Parties shall be restored to the *status quo ante*.

      4.      Reyerse further agrees that he will not appeal the dismissal of the Lawsuit, and that he will not file any additional claims, charges, administrative proceedings, lawsuits or other actions against CSI or any of the Released Parties based upon any events occurring prior to the execution of this Agreement. Reyerse affirms and represents that other than the Lawsuit, he has not filed or made any complaints, charges or claims of any nature whatsoever against any of the Released Parties, and that he has no knowledge of any complaint, charge or claim having been filed or brought on his behalf. If Reyerse learns of any such complaint, charge or claim, he shall promptly request withdrawal of the complaint, charge or claim. Notwithstanding anything to the contrary in this Agreement, this Agreement shall not limit any right Reyerse may have to file a charge or participate in a proceeding with the EEOC or NLRB, *however*, Reyerse waives and releases any right he may have to damages or other personal remedy or benefit in connection with any such charge or proceeding.

      5.      Reyerse shall pay any and all taxes that may be due as a result of the Payment. Reyerse understands that the Internal Revenue Service and other taxing authorities may determine that the full amount of the Payment constitutes wages. Reyerse agrees and affirms that he is not relying on any representation made by the Released Parties, by the Released Parties' attorneys, or by any person or entity related to the Released Parties, concerning whether or not the Payment is taxable as wages, as income, or


Jesse Reyerse initials

otherwise, or concerning the amount of taxes that he may be required to pay as a result of the Payment. Reyerse agrees that he will not be entitled to any additional consideration under this Agreement as a result of any assessment of, or liability for, taxes as a result of the Payment.  Additionally, Reyerse agrees to indemnify and hold the Released Parties harmless from and against any liability for any amounts determined by any taxing authority to be owed by the Released Parties on account of the Payment, or on account of Reyerse's failure to pay taxes he may owe as a result of the Payment.  This indemnification shall also apply to any penalty, interest or other sums, including attorneys' fees and costs that the Released Parties shall incur or owe in connection with or as a result of any such taxes.

6.    Except as provided in Paragraph 1 of this Agreement, Reyerse shall bear his own costs, expenses, and attorneys' fees, no matter how accrued or accruing, arising from or relating to the Lawsuit or other events giving rise to this Agreement.  Reyerse agrees to fully defend and indemnify and hold the Released Parties harmless from and against any liability occasioned by a failure of Reyerse or his attorney to reach further satisfactory arrangement regarding distribution of the Payment provided under this Agreement.

7.    In the event that the Released Parties should be required to defend any lawsuit or administrative charge or complaint filed or maintained by or on behalf of Reyerse in violation of this Agreement, Reyerse shall be liable to the Released Parties for all expenses (including discovery and other court costs and attorneys' fees) incurred in defending the same, regardless of the outcome of the litigation. This Paragraph shall not apply to actions for breach of this Agreement by or on behalf of any Party except for a claim by the Released Parties of a breach of Paragraph Nos. 2, 3 or 4.  However, this Paragraph shall not apply to the extent its application would violate the Older Workers' Benefit Protection Act.

8.    The Parties have entered into this Agreement in order to avoid the substantial costs, risks, uncertainties and inconvenience of litigation.  The Released Parties deny that they have acted wrongfully toward Reyerse, and the execution of this Agreement does not constitute an admission by any of the Released Parties that they have violated any law, statute, rule, regulation or ordinance of the United

Jesse Reyerse initials

States, the State of Florida, any other state, or any county or municipality, or that they have breached any of their policies or practices, or that Reyerse's claims are meritorious.

9.    Reyerse represents that he has had the advice of counsel of his choice and that after having had such advice he agrees and acknowledges that the Payment and this Agreement together constitute a fair and reasonable compromise of his alleged claims against CSI under the Fair Labor Standards Act.

10.    Reyerse warrants that he has not assigned, sold, subrogated, transferred, conveyed or pledged as security to anyone any actions, causes of action, claims or demands that he now has or ever had against the Released Parties, and he agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all actions, causes of action, claims or demands that may be brought against them, by anyone to whom Reyerse has assigned, sold, subrogated, transferred, conveyed or pledged as security any such actions, causes of action, claims or demands, whether such are asserted by third-party complaint, cross-claim or otherwise, or whether such are asserted for indemnity, contribution or otherwise.

11.    If, at any time after the execution of this Agreement, it is established that Reyerse has violated its terms, the Released Parties shall have the right to seek appropriate relief, including, but not limited to, an injunction restraining further violations.

12.    Reyerse agrees, confirms and warrants that: (a) the only consideration for his execution of this Agreement is that which is stated herein, and there are no other promises or agreements of any kind which have caused him to execute this Agreement; (b) he has not relied on statements or representations by the Released Parties, their agents or representatives, concerning the matters addressed in this Agreement; (c) he has carefully read and fully understands the provisions, meaning and intent of this Agreement, including but not limited to its release and waiver of claims and its final and binding effect; (d) the terms of this Agreement are contractual and not mere recitals; (e) he has been given a reasonable period of time within which to consider this Agreement; (f) he has had the benefit of

Jesse Reyerse initials

consulting with an attorney of his choice before executing this Agreement; and (g) he knowingly and voluntarily enters into this Agreement. Notwithstanding anything to the contrary in this Agreement, Reyerse is not waiving rights or claims that may arise after execution of this Agreement.

13.     Reyerse and his counsel shall complete and sign an Internal Revenue Service W-9 form, and Reyerse shall deliver those forms to CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801. Reyerse agrees that CSI may calculate deductions from the payment described in subparagraph 1(a) based on the W-4 form currently on file with CSI.

14.     CSI shall deliver the Payment to Reyerse's attorney, Wenzel Fenton Cabassa, P.A., within ten (10) business days following (a) dismissal of the Lawsuit with prejudice and (b) receipt by CSI's attorney, Aaron L. Zandy, Ford & Harrison LLP, 300 S. Orange Avenue, Suite 1300, Orlando, FL, 32801, of: (i) a copy of this Agreement with Reyerse's signature; and (ii) the W-9 forms described in Paragraph 13 of this Agreement. However, if the date for delivery falls on a Saturday, Sunday or legal holiday, then CSI shall be deemed to have complied with its obligation to deliver the Payment if it makes delivery on the next business day following the date upon which delivery would otherwise be due. For purposes of this Agreement, delivery is complete upon sending the Payment by U.S. Mail to Wenzel Fenton Cabassa, P.A. or upon receipt by Wenzel Fenton Cabassa, P.A.

15.     Reyerse agrees that any and all documents and evidence gathered or prepared by or on behalf of Reyerse in order to advance any claims he has or may have against any of the Released Parties, or to advance any claims described in Paragraph 2 of this Agreement, will be destroyed or retained in a secure place in the offices of Reyerse's attorney, and hereby agrees to make a good faith effort to ensure the destruction of any documents or evidence which Reyerse or anyone acting on his behalf previously disseminated to non-parties concerning such claims, including consultants, witnesses and investigators.

16.     Reyerse warrants that he is not a Medicare beneficiary as of the date of this Agreement, and that no conditional payments have been made to him by Medicare. Reyerse agrees to fully defend and indemnify and hold the Released Parties harmless from and against any and all damages, claims,

liens, attorneys' fees or other amounts that may be due or claimed to be due on account of any Medicare claims by him, or any Medicare payments or conditional payments to him or for his benefit.

17.    This Agreement may be executed in multiple counterparts, each of which shall be deemed to constitute an original.

18.    This Agreement and all terms thereof shall be construed and governed according to the laws of Florida.

19.    The waiver by any Party of a breach of any provision of this Agreement by any other Party shall not operate or be construed as a waiver of any subsequent breach of that or any other provision by said Party.

20.    The rights and obligations of Reyerse and the Released Parties under this Agreement shall inure to the benefit of and shall be binding upon their respective successors and assigns.

21.    Reyerse agrees, confirms and warrants that there exist no other agreements, oral or written, between Reyerse and any of the Released Parties and relating to any of the alleged claims covered by this Agreement, and agrees that this Agreement supersedes any and all prior or contemporaneous agreements, written or verbal, or any other understandings that exist or may have existed between Reyerse and any of the Released Parties with respect to the alleged claims covered by this Agreement.

22.    This Agreement may not be altered, amended, modified, or terminated except by an instrument in writing, executed by the Parties hereto or their authorized representatives.

23.    The Parties agree that if enforcement of any term of this Agreement would impose a limitation that is contrary to applicable law, then said term shall be construed to provide only as broad a limitation as the law allows (if any), and no broader limitation, and the remainder of this Agreement will continue to be valid and enforceable, unless such construction shall deprive either Party of the substantial benefit of its bargain.  The Parties further agree that if any provision in this Agreement is invalid, illegal or unenforceable, and if application of the first sentence of this Paragraph does not render the provision

Jesse Reyerse initials

Page 7 of 10

lawful, valid and enforceable, then said provision will be severed herefrom, and the remainder of this Agreement will continue to be valid and enforceable unless severance of said provision deprives a Party of the substantial benefit of its bargain.  The Parties agree, however, that any determination by any federal, state or local authority regarding treatment of the Payment, terms or consideration of this Agreement under any laws regarding taxation shall not constitute an event depriving any Party of the substantial benefit of its bargain.

24.    THE UNDERSIGNED STATE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT AND KNOW AND UNDERSTAND ITS CONTENTS, AND THAT THEY EXECUTED THIS AGREEMENT AS THEIR FREE ACT AND DEED.

25.    **BY SIGNING BELOW, THE PARTIES SIGNIFY THEIR INTENT TO BE BOUND BY ALL TERMS OF THIS AGREEMENT.**


Jesse Reverse initials

**Jesse Reverse**

**Signature**

Date: 5/26/16

Jesse Reverse initials

**Charley's Steakhouse – Cypress Street, Inc.**

By: _____

Its: _____SEC ITREAS_____

Date: ___06/14/16_____
WSACTIVELLP:8372609.1

Jesse Reyerse initials